# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

Ted Marcum,
       Petitioner

    vs                       Case No. 1:02cv425
                              (Weber, J.; Black, M.J.)

Ohio Adult Parole Authority,
       Respondent

## REPORT AND RECOMMENDATION

Petitioner, who apparently currently resides in Hamilton, Ohio, as a parolee under the supervision of the Ohio Adult Parole Authority, has filed this action pro se for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (*See* Docs. 2, 26, 32).  This matter is before the Court on the petition, respondent's return of writ, and petitioner's two-part memoranda in opposition to the return of writ, as well as the transcript of the challenged state criminal trial proceedings and additional documents submitted by respondent in accordance with this Court's Order issued March 11, 2004.  (Docs. 2, 5, 6, 20-21, 27, 28).

## Factual And Procedural Background

On November 15, 1995, petitioner was indicted by the Butler County, Ohio, grand jury on one count of assault as defined in Ohio Rev. Code § 2903.13(A), with an attached prior conviction specification; one count of defrauding a livery as defined in Ohio Rev. Code § 2913.41(A)(1), also with an attached prior conviction specification; one count of disorderly conduct as defined in Ohio Rev. Code § 2917.11(A)(1); and one count of resisting arrest as defined in Ohio Rev. Code § 2921.33(A).  (Doc. 5, Ex. A).  After a jury trial, petitioner was found guilty as charged.  On February 15, 1996, petitioner was sentenced to concurrent terms of imprisonment of two (2) to five (5) years for the assault offense, one (1) to five (5) years for the defrauding a livery offense, ninety (90) days for disorderly conduct and thirty (30) days for resisting arrest.  (*Id.*, Ex. B).

On March 4, 1996, petitioner's trial counsel filed a motion to vacate or correct sentence with the trial court, which was denied on March 8, 1996.  (*Id.,* Exs. J-K).

Thereafter, with the assistance of new counsel, petitioner filed a timely appeal to the Ohio Court of Appeals, Twelfth Appellate District, in which he presented three assignments of error that are not alleged as grounds for relief in the instant action. (*Id.*, Ex. D).  On December 23, 1996, the Court of Appeals affirmed the trial court's judgment.  (*Id.,* Ex. F).   Proceeding pro se, petitioner sought leave to appeal to the Ohio Supreme Court.  (*Id.,* Ex. G).  On April 9, 1997, the Ohio Supreme Court denied petitioner leave to appeal and dismissed the appeal "as not involving any substantial constitutional question."  (*Id.*, Ex. I).

Within a month thereafter, on May 1, 1997, petitioner filed a pro se motion entitled "Motion To Enlarge Time On Filing Motion To Reopen Appeal   On Reconsideration Pursuant To App. R. 26(B)" with the Ohio Court of Appeals, Twelfth Appellate District.  (*Id.,* Ex. L).  In the motion, petitioner argued that he should be allowed an extension of time to July 8, 1997 in which to file an application to reopen his appeal, because the Court of Appeals "lacked subject matter jurisdiction to entertain the application" for reopening while his notice of appeal and memorandum in support of jurisdiction were pending before the Ohio Supreme Court.  (*Id.,* p. 2). He also contended his conviction was not "final" until the Ohio Supreme Court denied him leave to appeal and, therefore, that he should be permitted ninety (90) days from the Ohio Supreme Court's final entry in which to file an application for reopening under Ohio R. App. P. 26(B).  (*Id.,* p. 4).  Petitioner did not submit a reopening application by the requested extension deadline date of July 8, 1997, and on August 5, 1997, the Court of Appeals denied his motion.  (*Id.,* Ex. M).  In the petition, petitioner states that he did not receive a copy of the Court of Appeals' ruling until September 25, 1997, when the prison "Case Unit Social Worker" discovered petitioner's misplaced mail in her desk. (Doc. 2, p. 27).  Petitioner did not attempt to appeal the Court of Appeals' decision to the Ohio Supreme Court. (*See id.,* pp. 27-28; Doc. 5*,* Brief, p. 3).

Instead, over a year later, on September 18, 1998, petitioner filed a motion in the Court of Appeals requesting leave to file a supplemental brief.  (Doc. 5, Brief, p. 3).  On October 6, 1998, the Court of Appeals denied the motion on the ground that the matter had been "concluded" by the court's previous entry of August 5, 1997 denying  petitioner's application for reconsideration.  (*Id.,* Ex. N).  Petitioner sought leave to appeal this decision to the Ohio Supreme Court.  In his memorandum in

support of jurisdiction, he asserted among other propositions of law numerous ineffective assistance of appellate counsel claims and, in his Fourteenth Proposition of Law, a claim that"Ohio State Appellate Rule 26(B) violates the Due Process and Equal Protection of the Law Clauses of the Fourteenth Amendment of the United States Constitution, when the statute denies potential persons on appeal enough time to 'reopen' their appeals–and the statute discr[i]minates between the 'rich' people and the 'poor.'" (*Id.*, Ex. O). On February 3, 1999, the Ohio Supreme Court dismissed the appeal "as not involving any substantial constitutional question." (*Id.,* Ex. P).

On May 14, 1998, a few months before filing his motion in the state appellate court requesting leave to file a supplemental brief in the reopening matter, petitioner filed a federal habeas corpus petition with this Court alleging twenty-two grounds for relief. (*Id.,* Ex. Q). In the petition, petitioner contended in a number of grounds that he was denied effective assistance of appellate counsel. (*See id.,* pp. 8-9, 12-14, 18-20, Grounds Five, Six, Ten, Eleven, Thirteen, Seventeen, Eighteen, Nineteen, Twenty). In Ground Fourteen, he also asserted essentially the same claim quoted above, *see supra* p. 3, which was alleged as the fourteenth proposition of law in his memorandum in support of jurisdiction to the Ohio Supreme Court on appeal from the Ohio Court of Appeals' October 6, 1998 Entry denying his motion to file a supplemental brief. (*See id.,* p. 15).

On May 21, 2001, recently retired United States Magistrate Judge Jack Sherman, Jr. issued a Report and Recommendation, wherein it was determined that although petitioner had procedurally defaulted all of his grounds for relief in the state courts, the petition nevertheless was subject to dismissal without prejudice on exhaustion grounds because the state remedy of a successive application for reopening was "possibly available" to pursue relief on the claim alleged in Ground Fourteen of the petition. (*See id.,* Ex. S). On September 17, 2001, the Court adopted the report and recommendation and dismissed petitioner's federal habeas petition without prejudice to refiling after petitioner exhausted the possibly available state remedy. (*See id.,* Ex. T). The dismissal order contained a provision tolling the running of the one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1) as of the date the petition was filed, subject to two conditions: (1) that petitioner pursue the state remedy within thirty days, and (2) that he file a renewed federal habeas petition within thirty days after exhausting his state remedies. (*Id.,* p. 2).

On October 16, 2001, within the requisite thirty-day period set forth as the first condition in the tolling order, petitioner filed a "Delayed Application For

3

Reconsideration And Reopening Of The Direct Appeal" in the Ohio Court of Appeals. (*Id.,* Ex. V). In the application, petitioner asserted the following assignments of error: (1) he was denied his constitutional "right to effective appellate review . . . when appellate counsel refused to send [him] the trial court transcript record in a timely fashion, so as to enable [him] to raise claims of ineffective assistance of counsel in a timely application for reopening;" (2) he was denied access to the court and effective assistance of counsel when prison officials lost the Ohio Court of Appeals' entry denying his request for an enlargement of time to prepare a reopening application, which precluded him from further appealing to the Ohio Supreme Court; (3) he was denied his constitutional right to counsel on direct appeal due to the absence of any provision for assignment of counsel in Ohio R. App. P. 26(B); (4) he was denied effective assistance of counsel when his attorney on direct appeal failed to raise the claim that his conviction for defrauding a livery was based on insufficient evidence; (5) he was denied effective assistance of counsel when his attorney on direct appeal failed to raise ineffective assistance of trial counsel claims; and (6) he was denied effective assistance of counsel on direct appeal "due to counsels' failure to file a delayed motion for 'reconsideration' under Ohio App. R. 14(B) and 26(A)." (*Id.*, pp. 4-10).

On January 14, 2002, the Court of Appeals denied petitioner's reopening application on the ground that petitioner had not shown "good cause as to why the application was not filed in a timely manner." (*Id.,* Ex. X, Opinion, p. 5). Despite its determination that the application was untimely filed, the court addressed the issue which had caused the district court to dismiss petitioner's federal habeas petition without prejudice on exhaustion grounds–i.e., whether petitioner was denied his constitutional right recognized in *White v. Schotten,* 201 F.3d 743 (6th Cir.), *cert. denied,* 531 U.S. 940 (2000), "to appointed counsel to assist in the filing of motion for delayed reopening under App.R. 26(B)." (*See id.*). The court held that *White* was inapposite because the case only "stands for the proposition that where counsel participates in the filing of an App.R. 26(B) application and fails to complete the filing in a timely manner, the applicant's constitutional right to the effective assistance of counsel in the filing of such[] an application precludes the dismissal of a federal habeas corpus claim on the basis of a procedural default." (*Id.*, pp. 6-7). The court went on to find that *White* "does not require the appointment of counsel for the initial filing of an application to reopen under App.R. 26(B)," as petitioner contended, but rather "merely states that *[]if* an applicant is represented by counsel" in a reopening matter, such counsel must provide effective assistance in the filing of the application. (*Id.,* p. 7) (emphasis in original).

4

Petitioner sought leave to appeal to the Ohio Supreme Court . (*Id.*, Ex. Y).  On May 1, 2002, the Ohio Supreme Court entered an order summarily dismissing the appeal "as not involving any substantial constitutional question." (*Id.,* Ex. Z).

The instant 62-page petition was received for filing on June 7, 2002, within a week after the expiration of the requisite thirty-day period set forth as the second condition for tolling the one-year statute of limitations during the pendency of petitioner's first federal habeas action. (*See* Doc. 2).  Petitioner alleges the following grounds for relief, which are quoted verbatim from the petition:

**Ground One:**  Petitioner was denied . . . his Sixth and Fourteenth Amendment rights under the United States Constitution and effective appellate review on raising ineffective assistance of appellate counsel claims, when appellate counsel refused to provide to appellant . . . the trial court transcript record of proceedings, in a timely fashion, so as to have enabled petitioner to timely file a pro se application for reconsideration and reopening of his direct appeal, pursuant to Ohio Appellate Procedural Rule 26(B).

**Ground Two:**  Petitioner was denied . . . his Sixth and Fourteenth Amendment rights under the United States Constitution based on misconduct committed by prison officials, and inadequate law library f[a]cilities, which prejudicially denied petitioner . . . access to the courts; and to effective assistance of counsel; and to effectively represent himself pro se.

**Ground Three:**  Appellant was prejudicially denied . . . his Sixth and Fourteenth Amendment rights on direct appeal proceedings, due [to] the fact that Ohio Appellate Procedural Rule 26(B) fails to contain any provision for assignment of counsel on behalf of indigent appellant[]s, seeking to reopen their appeals, for filing a timely application for reopening.

**Ground Four:** Petitioner was prejudicially denied . . . his Sixth and Fourteenth Amendment rights to effective assistance of appellate counsel, on direct appeal, due to appellate counsels' failure to raise a claim that appellant's conviction for "defrauding a livery," is based on insufficient evidence; is contrary to law; and is void.

**Ground Five:**  Petitioner was prejudicially denied . . . his Sixth and Fourteenth Amendment right to effective assistance of counsel on direc[t] appeal, due to appellate counsels' failure to litigate claims that trial counsels' assistance was prejudicially ineffective, which deprived appellant of his right to a fair trial.

**Ground Six:**  Petitioner was prejudicially denied . . . his Sixth and Fourteenth Amendment right to effective assistance of counsel on direct appeal proceedings, due to appellate counsels' failure to file a motion for "reconsideration," under Ohio App. P. R. 14(B) & 26(A).

**Ground Seven:**  Petitioner's Sixth and Fourteenth Amendment rights under the United States Constitution [were] violated, when 1) Ohio App. P. R. 14(B), 26-(A) & (B), are not an "adequate" or "independent" state court remedy, under federal and state law, to preclude federal habeas corpus relief; and 2) based on the fact that the Ohio state court[]s fail to follow the "good cause" exception to the rule under Ohio App. P. R. 26(B); and the "extraordinary circumstance" exception under Ohio App. P. R. 14(B) and 26(A).

(*Id.,* pp. 20, 25, 30, 36, 39, 47, 55).

In the return of writ, respondent contends the petition is time-barred because petitioner failed to comply with the second condition of the tolling provision contained in the September 17, 2001 Order dismissing his prior federal habeas petition without prejudice on exhaustion grounds, and, therefore, is precluded from claiming entitlement to equitable tolling of the one-year statute of limitations set forth in 28 U.S.C. § 2244(d) during the pendency of that action.  (Doc. 5, Brief, pp.  8-21). As respondent points out, petitioner did not submit the instant petition for filing until after the 30-day period for filing a renewed petition under the second tolling condition expired.  However, because the petition signed by petitioner on May 29, 2002 was received by the Court the following week and it appears the delay in filing was due in large part to the prison cashier's delay in preparing and signing the certification in support of petitioner's *in forma pauperis* application (*see* Doc. 1; Doc. 2, p. 62), the Court will assume, without deciding, that the statute of limitations was equitably tolled during the pendency of the prior federal habeas petition and, therefore, that the instant petition is not time-barred.  *Cf. Duncan v. Walker,* 533 U.S. 167, 184 (2001) (Stevens, J., concurring) (although a federal habeas petition cannot toll the one-year

6

statute of limitations under the statutory tolling provision set forth in 28 U.S.C. § 2254(d)(2), the federal court's equitable powers may be used to toll the limitations period for "the class of petitioners whose timely filed habeas petitions remain pending in district court past the limitations period, only to be dismissed after the court belatedly realizes that one or more claims have not been exhausted").

This case does not present any exhaustion issue. Therefore, the Court will proceed to address petitioner's grounds for relief in light of the parties' arguments asserted in the petition, return of writ, and "traverse" briefs.

## OPINION

### Petitioner Has Waived The Claims Alleged In Grounds One Through Six, And His Arguments Against A Finding Of Waiver, Which Are Alleged As A Separate Claim For Relief In Ground Seven, Lack Merit

In Grounds One through Three of the petition, petitioner contends he was precluded from filing a timely application to reopen his appeal under Ohio R. App. P. 26(B) due to: (1) his appellate counsel's refusal to provide him with a copy of the trial transcript in a timely manner (Ground One); (2) inadequate prison law library materials and the "misconduct" of prison officials in the handling of his legal mail, which denied him access to the courts (Ground Two); and (3) the absence of any provision in Ohio R. App. P. 26(B) for the appointment of counsel to assist in the filing of a timely application for reopening (Ground Three).[1] (*See* Doc. 2, pp. 20-35). In Grounds Four

---

[1]In a recent panel decision, the Sixth Circuit held that a petitioner, who claimed his constitutional rights were violated by the Ohio Court of Appeals in a reopening proceeding brought pursuant to Ohio R. App. P. 26(B), was unable to demonstrate under the applicable standard of review set forth in 28 U.S.C. § 2254(d), as amended in 1996 by the Antiterrorism and Effective Death Penalty Act (AEDPA), that the state appellate court's challenged ruling, after "the stage in the appellate process at which the claims have once been presented by a lawyer and passed by an appellate court," *Douglas v. California,* 372 U.S. 353, 356 (1963), was contrary to or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court. *See Lopez v. Wilson,* 355 F.3d 931, 938-41 (6th Cir. 2004). The *Lopez* panel decision was recently vacated when a rehearing en banc was granted in that case. *Lopez,* 366 F.3d 430 (6th Cir. 2004). It is noted, however, that if the panel decision had not been vacated, petitioner would be unable to prevail on the merits of the claims raised in his first three grounds for relief.

through Six of the petition, petitioner alleges he was denied effective assistance of appellate counsel in violation of the Sixth Amendment when his attorney on direct appeal (1) failed to assert as assignments of error that his "defrauding a livery" conviction is based on insufficient evidence (Ground Four) and that his trial counsel provided ineffective assistance (Ground Five); and (2) failed to file a motion for reconsideration under Ohio R. App. P. 14(B) and 26(A) (Ground Six). (Doc. 2, pp. 36-55). In the return of writ, respondent argues that petitioner has waived these claims due to his procedural defaults in the state courts. (Doc. 5, Brief, pp. 22-24).

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must first fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c)*; see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir.), *cert. denied,* 474 U.S. 831 (1985).

If petitioner fails to fairly present his claims through the requisite of levels of state appellate review to the state's highest court, or commits some other procedural default to preclude review of the merits of petitioner's claims by the state's highest court, and if no avenue of relief remains open or if it would otherwise be futile for petitioner to continue to pursue his claims in the state courts, the claims are subject to dismissal with prejudice or waived. *See Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989). If, because of a procedural default, petitioner has not had his claims considered by the state's highest court on the merits and he can no longer present his claims to the state courts, he has waived the claims for purposes of federal habeas corpus review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional errors, or that failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In this case, as discussed in the Report and Recommendation to dismiss

petitioner's first federal habeas petition, petitioner committed a number of procedural defaults when he initially attempted to reopen his direct appeal to assert ineffective assistance of appellate counsel claims. (*See* Doc. 5, Ex. S, pp. 9-10). First, when petitioner filed his motion on May 1, 1997 to extend the time for filing an application for reopening, he committed a procedural default by failing to file by the requested extension deadline date of July 8, 1997 the actual application setting forth the alleged claims of error that occurred during the direct appeal proceedings. Petitioner committed a second procedural default when he did not appeal the Ohio Court of Appeals' denial of his motion for enlargement of time to the Ohio Supreme Court. Finally, when petitioner tried a second time to reopen the appeal over a year later in September 1998, he committed a third procedural default because he only filed a motion requesting leave to file a supplemental brief and again did not submit an actual application for reopening setting forth the alleged claims of error that occurred during the direct appeal proceedings. Indeed, petitioner did not raise any claims to be addressed in a reopening matter until he filed his memorandum in support of jurisdiction to the Ohio Supreme Court from the Court of Appeals' October 6, 1998 denial of his motion for leave to file a supplemental brief. However, as determined in the Report and Recommendation issued in the prior habeas action, "the Ohio Supreme Court was precluded from considering the substance of those claims because petitioner had not presented them to the Ohio Court of Appeals. *See* Ohio Const. art. IV, § 2(B)(2); *State v. Jones,* 211 N.E.2d 198, 199 (Ohio 1965), *cert. denied,* 383 U.S. 918, 951 (1966); *see also Leroy,* 757 F.2d at 99; *Fornash v. Marshall,* 686 F.2d 1179, 1185 n.7 (6th Cir. 1982), *cert. denied,* 460 U.S. 1042 (1983). Moreover, the Ohio Supreme Court was precluded from considering the substance of the claims, because the appeal in which they were raised was from an order denying petitioner leave to file a supplemental brief in a matter that had essentially concluded over one year before when the Court of Appeals denied petitioner an extension of time in which to file an application for reopening of the appeal." (Doc. 5, Ex. S, p. 10).

In the Report and Recommendation, which was later adopted as an order by the district judge, the Court concluded that petitioner's claims were subject to dismissal with prejudice on waiver grounds because petitioner had not demonstrated cause for his numerous procedural defaults. (*Id.,* pp. 10-14, 16). However, concerned about the implications of the Sixth Circuit's decision in *White v. Schotten*, 201 F.3d 743 (6th Cir.), *cert. denied,* 531 U.S. 940 (2000), issued a year after the Ohio Supreme Court entered its final order on February 3, 1999 rejecting petitioner's then-latest attempt to reopen his appeal, *see supra* p. 4, the Court recommended that the petition be dismissed without prejudice so that petitioner could exhaust the "possibly available"

9

state remedy of a successive reopening application with respect to one claim alleged in Ground Fourteen that petitioner was denied his constitutional rights to equal protection and due process by Ohio R. App. P. 26(B), which does not contain a provision for appointment of counsel for indigent applicants seeking to reopen their direct appeals. (*Id.*, pp. 15-16; *see also* Ex. T). In so ruling, the Court stated: "[I]f the Ohio courts do not adopt the interpretation favoring the availability of the state remedy or otherwise fail to consider petitioner's claim on the merits, . . . any subsequent habeas corpus petition filed by petitioner pursuant to 28 U.S.C. § 2254 faces dismissal with prejudice on waiver grounds." (*Id.,* Ex. S, p. 16).

Petitioner did subsequently file a delayed application for reopening as specified in the exhaustion dismissal order, in which he presented the claims alleged in Grounds One through Three, as well as the ineffective assistance of appellate counsel claims alleged in Grounds Four through Six, of the petition. However, finding *White* to be inapposite, the Ohio courts refused to address the merits of these claims on the state procedural ground that the application was not filed "in a timely manner" and petitioner had not shown "good cause" for his delay in filing. (*See id.,* Ex. X, Opinion, pp. 5-7; *see also* Ex. Z).

It is well-settled that, on federal habeas corpus review, a court may be barred from considering an issue of federal law from a judgment of a state court if the state judgment rests on a state-law ground that is both "independent" of the merits of the federal claim and an "adequate" basis for the state court's decision. *Harris,* 489 U.S. at 260-62 The adequate and independent state ground doctrine has been applied to state decisions refusing to address the merits of a federal claim because of violations of state procedural rules. *Id.* at 261; *Sykes,* 433 U.S. at 86-87; *see also McBee,* 763 F.2d at 813. An adequate and independent finding of procedural default will preclude habeas corpus review of the federal claim, absent the requisite showing of "cause" and "prejudice" or that failure to consider the federal claim will result in a "fundamental miscarriage of justice." *See supra* pp. 8-9; *Coleman,* 501 U.S. at 750; *Harris,* 489 U.S. at 262.

The procedural default does not bar consideration of a federal claim on habeas corpus review unless the last state court rendering a judgment in the case "clearly and expressly" states that its judgment rests on a state procedural bar. *Harris,* 489 U.S. at 263. In cases where the last state court to render a reasoned opinion on the claim explicitly relies on a procedural bar, the court will presume that a later unexplained order did not silently disregard the procedural default and consider the merits of the

10

claim. *Ylst v. Nunnemaker,* 501 U.S. 797, 803-04 (1991). In this case, it is clear the state court of appeals denied the delayed application for reopening on state procedural timeliness grounds, and the Ohio Supreme Court's later unexplained decision summarily dismissing the appeal for lack of a substantial constitutional question must be presumed to rely on the same procedural default. *See Taqwiim v. Johnson*, 229 F.3d 1154 (table), No. 99-3425, 2000 WL 1234322, at **3 (6th Cir. Aug. 22, 2000) (unpublished) (citing *Levine v. Torvik,* 986 F.2d 1506, 1517 n.8 (6th Cir.), *cert. denied,* 509 U.S. 907 (1993), and *Ylst,* 501 U.S. at 803-04), *cert. denied,* 531 U.S. 1089 (2001).

In Ground Seven of the petition, petitioner essentially contends the state-law ground relied on by the Ohio Court of Appeals in denying his delayed application for reopening under Ohio R. App. P. 26(B) was not an adequate and independent basis for the court's decision.[2] (Doc. 2, pp. 55–61). It goes without saying that a state procedural timeliness rule, such as was invoked here, constitutes a state-law ground that is "independent" of the federal claim. Therefore, the inquiry must focus on the rule's adequacy. A state procedural rule is adequate if it was "firmly established" and "regularly followed" by the time it was applied in this case. *Monzo v. Edwards,* 281 F.3d 568, 577 (6th Cir. 2002) (citing *Ford v. Georgia,* 498 U.S. 411, 423-24 (1991), and *Johnson v. Mississippi,* 486 U.S. 578, 587 (1988)). In 1992, the Ohio Supreme Court held in *State v. Murnahan,* 584 N.E.2d 1204 (Ohio 1992), that ineffective assistance of appellate counsel claims must be raised in a motion for reconsideration to the Ohio Court of Appeals, as opposed to a petition for post-conviction relief to the trial court. *See Monzo,* 281 F.3d at 577; *see also Coleman v. Mitchell,* 244 F.3d 533, 539 (6th Cir.), *cert. denied,* 534 U.S. 977 (2001). On July 1, 1993, Ohio R. App. P.

---

[2]He also argues in Ground Seven that Ohio R. App. P. 14(B) and 26(A) do not constitute an "'adequate' or 'independent' state court remedy" sufficient to preclude federal habeas review of the merits of his claims, and that his constitutional rights were violated by the Ohio Court of Appeals' failure "to follow the 'extraordinary circumstance' exception under Ohio App. P. R. 14(B) and 26(A)." (Doc. 2, pp. 55-61). This argument has no relevance to the case-at-hand because no delayed application for reconsideration pursuant to Ohio R. App. P. 26(A) was ever filed for the Ohio Court of Appeals to consider and thus reject as untimely filed. Moreover, Ohio R. App. P. 14(B), which permits the state appellate court to enlarge filing deadline times for "good cause shown," is relevant only to the extent it informed the state court's procedural ruling under Ohio R. App. P. 26(B). As discussed *infra* pp. 12-18, the Ohio Court of Appeals' application of the "good cause" standard set forth in Ohio R. App. P. 14(B), as the basis for denying petitioner's delayed application for reopening under Ohio R. App. P. 26(B), constituted an adequate and independent state ground which precludes review of the merits of petitioner's claims alleged in Grounds One through Six.

26(B) was amended to provide that a "defendant in a criminal case may apply for reopening of the appeal from the judgment of conviction and sentence, based on a claim of ineffective assistance of appellate counsel." Ohio R. App. P. 26(B)(1); *see also Coleman,* 244 F.3d at 539-40. Pursuant to this amended rule, an application for reopening must be filed "within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time." Ohio R. App. P. 26(B)(1) and 26(B)(2)(b). Therefore, by the time petitioner's direct appeal concluded in December 1996, the ninety-day deadline for filing a timely application for reopening was firmly established. Moreover, by the time this time requirement was applied in this case, it appears the rule was "regularly followed" by the Ohio appellate courts in denying applications for delayed reopening of appeals.

The closer question posed here is whether the "good cause" requirement for excusing non-compliance with the 90-day deadline constitutes an adequate state procedural ground. In *White,* 201 F.3d at 751, the Sixth Circuit discussed in dicta Ohio R. App. P. 26(B)'s "good cause" requirement as applied in Ohio in the years 1993 and 1994. *See Monzo,* 281 F.3d at 577-78. Specifically, the court stated:

> A review of the Ohio court of appeals cases attached to Petitioner's brief reveals that the state courts have not achieved consensus on what constitutes "good cause" to excuse non-compliance with Rule 26(B). Nonetheless, we recognize that the rule is relatively new and acknowledge that it may take some time for the Ohio courts to achieve consensus.

*Monzo,* 281 F.3d at 578 (quoting *White,* 201 F.3d at 751 (citations omitted)).

In *Monzo,* however, the Sixth Circuit rejected the argument that there was no firmly established or regularly followed standard for applying the "good cause" requirement to an application for reopening that was denied in June 1998. The court reasoned:

> Our review of Ohio law leads us to conclude that there was sufficient guidance as to what would not constitute good cause at the time the rule was applied in this case. We do not dwell on the decisions issued shortly after the *Murnahan* decision, as the Ohio courts have had several years since then to consider the "good cause" requirement. . . . The

12

Ohio Supreme Court shed light on the appropriate focus for determining good cause under Rule 26(B) in *State v. Reddick,* 72 Ohio St.3d 88, 647 N.E.2d 784, 786 (1995)....
That is, the Court in *Reddick* stressed that:

> Neither *Murnahan* nor App.R. 26(B) was intended as an open invitation for persons sentenced to long periods of incarceration to concoct new theories of ineffective assistance of appellate counsel in order to have a new round of appeals. Rather, both were intended to allow the belated presentation of colorable claims that defendants/appellants were prevented from presenting timely by particular circumstances. Lack of effort or imagination, and ignorance of the law, are not such circumstances and do not automatically establish good cause for failure to seek timely relief.

647 N.E.2d at 786. Further, "issues of ineffective assistance of appellate counsel must be raised at the first opportunity to do so." *State v. Williams,* 74 Ohio St.3d 454, 659 N.E.2d 1253, 1254 (1996). *See also State v. Franklin,* 72 Ohio St.3d 372, 650 N.E.2d 447, 448 (1995) (ignorance of the law does not justify untimely filing of a motion to reopen)[.] . . . Thus, we find the state courts relied on an adequate and independent state procedural ground to foreclose review of petitioner's *Murnahan* claim.

*Monzo,* 281 F.3d at 578 (some citations omitted).

In this case, petitioner first indicated an interest in seeking a reopening of his appeal in May 1, 1997, when he filed his motion for extension of time in which to file a reopening application, long after the Ohio Supreme Court issued its decisions in *Reddick, Williams,* and *Franklin* setting forth standards for applying the "good cause" requirement. The law was even more well-settled when over a year later, in September 1998, petitioner filed his motion for leave to file a supplemental brief in a second attempt to reopen his appeal, and when in October 2001, he finally filed

a delayed application for reopening with the Ohio Court of Appeals.

In 1997, when he first requested the extension of time to file a reopening application, petitioner contended as "good cause" for his request that he believed the 90-day filing period did not begin to run until after the Ohio Supreme Court denied him leave to appeal from the Ohio Court of Appeals' direct appeal decision. (*See* Doc. 5, Ex. L). There is no indication in the record whether petitioner asserted any "good cause" arguments when, over a year later, he filed his second motion for leave to file a supplemental brief with the Ohio Court of Appeals. Most recently, in his latest attempt to reopen his appeal, petitioner argued as "good cause" for his untimely filing that his counsel on direct appeal did not provide him with a copy of the trial transcript in a timely manner; that inadequate materials in the prison law library misled him about the requirements for filing a timely reopening application; that his delayed receipt of the Ohio Court of Appeals' August 5, 1997 denial of his motion for extension of time precluded him from appealing further to the Ohio Supreme Court; and that Ohio R. App. P. 26(B) failed to provide for the appointment of counsel, who would have ensured the timely filing of a reopening application on his behalf. (*Id.,* Ex. V). Petitioner has reiterated these most recent "good cause" arguments as claims of constitutional error in Grounds One through Three of the instant petition. It is further presumed that these arguments undergird petitioner's conclusory claim alleged in Ground Seven that the Court of Appeals failed "to follow the 'good cause' exception to the rule under Ohio App. P. R. 26(B)." (Doc. 2, p. 55).

The Court concludes that the explanations provided by petitioner to establish "good cause" are insufficient to explain how petitioner was "prevented . . . by particular circumstances," *Reddick,* 647 N.E.2d at 786, from presenting his claims in a timely application for reopening under Ohio R. App. P. 26(B). Since *Reddick,* the Ohio courts have consistently rejected arguments such as are asserted by petitioner here that "good cause" may be shown by inadequate access to the trial record or legal resources and lack of knowledge of the remedy provided by Ohio R. App. P. 26(B). *See, e.g., State v. Sweeney,* 723 N.E.2d 655, 656-58 (Ohio Ct. App. 1999) (per curiam) (and numerous cases cited therein) ("good cause" was not established by conclusory assertion that petitioner had not obtained access to the trial transcript and only had limited access to a law library); *State v. Bruce,* No. 70982, 2002 WL 664014, at *2-3 (Ohio Ct. App. Apr. 9, 2002) (unpublished) (and numerous cases cited therein) (rejecting contentions that defendant's difficulty in obtaining the transcript and other parts of the record and incarceration in a prison

outside Ohio constituted "good cause" for his delay in filing a reopening application), *appeal dismissed,* 770 N.E.2d 1050 (Ohio 2002); *see also Abreu v. Huffman,* 27 Fed.Appx. 500, 505 (6th Cir. Nov. 13, 2001) (per curiam) (not published in Federal Reporter) (rejecting argument that denial of access to trial transcript "justified dilatory Rule 26(B) filings" given numerous, cited "intermediate state appellate court decisions . . . universally conclud[ing] 'that the inability to obtain transcripts is not a sufficient basis for the untimely filing of an application for reopening'"), *cert. denied,* 535 U.S. 1120 (2002); *cf. Houston v. Anderson,* 129 F.3d 1264 (table), No. 96-4386, 1997 WL 693552 (6th Cir. Oct. 31, 1997) (unpublished) (holding that petitioner's inability to obtain trial transcript did not excuse his procedural default in failing to filing a timely application to reopen his appeal), *cert. denied,* 525 U.S. 850 (1998).

Moreover, despite his purported misapprehension about the Ohio Court of Appeals' authority to rule on a reopening application while his appeal was pending before the Ohio Supreme Court, petitioner could have filed such an application alleging ineffective assistance by his appellate counsel during the pendency of his appeal before the Ohio Supreme Court. Rule II, § 2(D)(1), of the Rules of Practice of the Supreme Court of Ohio, as amended effective April 1, 1996, expressly provides that the Ohio Court of Appeals retains jurisdiction while an appeal is pending before the Ohio Supreme Court to rule on an application for reopening filed pursuant to Ohio R. App. P. 26(B). *See State v. Ayala,* 676 N.E.2d 1201, 1202 (Ohio Ct. App. 1996). In any event, even assuming, *arguendo,* that this "good cause" argument raised in petitioner's initial request for enlargement of time has merit in light of petitioner's subsequently asserted claim that materials in the prison law library were inadequate to inform him of the Ohio Court of Appeals' retained jurisdiction, petitioner provided no explanation as to why he failed to file a reopening application by the requested extension deadline date of July 8, 1997; why he failed to file an appeal to the Ohio Supreme Court from the August 5, 1997 denial of his extension motion;[3] and why he waited until over a year later, on

_____

[3]Petitioner has claimed that he did not receive notice of the Ohio Court of Appeals' August 5, 1997 ruling until September 25, 1997, when a prison social worker discovered she had misplaced his legal mail. (Doc. 2, p. 27). Under Ohio law, petitioner was permitted 45 days from entry of the judgment being appealed to perfect an appeal to the Ohio Supreme Court. Rule II, § 2(A)(1), of the Rules of Practice of the Supreme Court of Ohio. Although petitioner claims he did not receive a copy of the Court of Appeals' order until the day following the expiration of the 45-day appeal period, he did not seek leave to file a delayed appeal to the Ohio Supreme Court and, indeed, made no further attempt to reopen his appeal until over a year later.

15

September 18, 1998, to initiate his second attempt to reopen his appeal. The Ohio courts have for many years consistently held that "[g]ood cause can excuse the lack of a filing only while it exists, not for an indefinite period." *See, e.g., State v. Carter,* 640 N.E.2d 811 (Ohio 1994) (per curiam) (affirming the denial of an application for reopening, despite the fact that the defendant had been represented by the same counsel on direct appeal and further appeal to the Ohio Supreme Court, because no good cause was established for defendant's failure to file the application to reopen until over one year after the Ohio Supreme Court's decision on direct appeal), *cert. denied,* 514 U.S. 1010 (1995); *see also State v. Ballew,* 729 N.E.2d 753, 754-55 (Ohio 2000) (per curiam); *State v. Fox,* 700 N.E.2d 1253, 1254 (Ohio 1998) (per curiam); *State v. Jells,* No. 54733, 2000 WL 545963 (Ohio Ct. App. Apr. 26, 2000) (unpublished), *aff'd,* 739 N.E.2d 345 (Ohio 2000); *State v. Carter,* No. C-920604, 1999 WL 33441359, at *1 (Ohio Ct. App. Oct. 21, 1999) (unpublished).

The Court is concerned by petitioner's final argument that given the Sixth Circuit's decision in *White,* which suggests he was constitutionally entitled to the appointment of counsel in the reopening matter as part of the direct appeal process, Ohio R. App. P. 26(B) is an "inadequate" procedural rule by failing to provide for the appointment of counsel to assist indigent prisoners such as himself in filing timely reopening applications. However, as a Sixth Circuit panel majority pointed out in an unpublished decision criticizing, but nevertheless following *White* in deciding a statute of limitations question, the Ohio courts of appeals have been unanimous in their refusal to follow *White* or to extend *White*'s holding to a case such as this, where petitioner neither requested nor was represented by counsel in the state reopening matter. *See Lambert v. Warden, Ross Correctional,* 81 Fed.Appx. 1, 5 (6ᵗʰ Cir. Sept. 2, 2003) (not published in Federal Reporter) (and state cases cited therein) ("[i]n Ohio Courts, the response to *White* was unanimously hostile" as in "every single instance that the issue was raised, the Ohio appellate courts refused to follow the holding of *White*"). Contrary to the position taken in *White,* both before and after *White,* reopening applications have been universally viewed by the state appellate courts, and are implied in Rule II, § 2(A)(4)(b), of the Rules of Practice of the Supreme Court of Ohio, to be in the nature of petitions for "postconviction relief rather than a continuation of the direct appeal process." *State v. Collins,* No. 00AP-650, 2002 WL 77117, at *1 (Ohio Ct. App. Jan. 22, 2002) (unpublished) (and cases cited therein); *see also State v. Worwell,* No. 80871, 2003 WL 22019526, at *3 (Ohio Ct. App. Aug. 25, 2003) (unpublished), *appeal dismissed,* 800 N.E.2d 48 (Ohio 2003); *State v. Dozier,* Nos. 56120, 56121, 2002 WL 42964, at *2 (Ohio Ct. App. Jan. 3, 2002) (unpublished) (and cases cited

therein), *appeal dismissed,* 765 N.E.2d 877 (Ohio 2002); *State v. Bragg,* No. 58859, 2001 WL 1671424, at *1 (Ohio Ct. App. Nov. 26, 2001) (unpublished) (and cases cited therein), *appeal dismissed,* 763 N.E.2d 1186 (Ohio 2002); *cf. Lambert,* 81 Fed.Appx. at 5 (although recognizing the Ohio Supreme Court had not yet addressed the question raised by *White*, "in its practice rules it implies that 26(B) applications are postconviction matters"). Indeed, in *Lambert,* the panel majority suggested in dicta that in contradiction to *White,* "26(B) applications should be classified as collateral, rather than direct, review" since "the Ohio courts, the authoritative interpreters of Ohio procedure, are unanimous in consider 26(B) applications to be part of collateral review and have held so repeatedly before and after *White,*" and the "Ohio Supreme Court's rules of practice agree" with this interpretation. *Lambert,* 81 Fed.Appx. at 8-9.

Therefore, it appears clear that at least as a matter of state law, it was a "firmly established" and "regularly followed" practice to treat reopening applications as post-conviction petitions, to which no constitutional right to counsel attached, *see Coleman,* 501 U.S. at 752, and *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987), that could be used as a "good cause" argument for excusing an untimely filing. The Court refuses to find that the Ohio Court of Appeals' application of this "firmly established" and "regularly followed" practice, in determining that petitioner was not entitled to the appointment of counsel to assist him in the filing of a timely reopening application, was "inadequate" as a matter of federal constitutional law based on *White*. Although *White* remains binding precedent in the Sixth Circuit, the *Lambert* majority decision has raised doubts about its "continuing viability." *Eads v. Morgan*, 298 F.Supp.2d 698, 707 (N.D. Ohio 2003) (although faced with the very question decided in *White* as to whether the lack of effective assistance of counsel in a state reopening matter may constitute "cause" for a state procedural default for purposes of federal habeas review, out of concern about *White*'s "continuing viability," the district court certified two questions to the Ohio Supreme Court for the purpose of obtaining guidance from the state's highest court as to when, if ever, an application for reopening may be considered a part of the direct appeal); *see also Granger v. Hurt,* 84 Fed.Appx. 500, 503 (6th Cir. Dec. 3, 2003) (not published in Federal Reporter) (although holding based on *White* that a federal habeas petition was timely filed, the court discussed an "alternative ground" for its decision "in light of the apparent discontent with *White*"), *amended and superseded by,* 90 Fed.Appx. 97 (6th Cir. Jan. 23, 2004) (not published in Federal Reporter). In any event, *White* should not be extended to excuse the many procedural defaults committed by petitioner in this case over the

17

years preceding that decision.

Accordingly, in sum, the Court concludes that contrary to petitioner's arguments in Ground Seven of the petition, the state appellate courts' refusal to reopen petitioner's appeal for lack of "good cause" shown was based on an adequate and independent state ground, which may serve to bar review of the merits of petitioner's remaining claims alleged in Grounds One through Six. Because of his many procedural defaults, petitioner has waived these claims absent a showing of cause and prejudice or that a fundamental miscarriage of justice will occur if the underlying merits of the claims are not reviewed. *See supra* pp. 8-9, 10; *Coleman,* 501 U.S. at 750; *Harris,* 489 U.S. at 262.

As discussed in detail in the Report and Recommendation that resulted in the dismissal of petitioner's first federal habeas petition, petitioner has not shown cause for his procedural defaults in the state courts when he attempted to reopen his appeal first in 1997 and then over a year later in 1998. (Doc. 5, Ex. S, pp. 11-14). Moreover, as discussed above, *see supra* pp. 14-18, petitioner's claims of "cause" asserted in his successive, delayed application for reopening filed after the dismissal of his prior federal habeas petition are not sufficient to justify his failure to file a timely application for reopening with the Ohio Court of Appeals or to excuse his numerous procedural defaults in attempting to seek a delayed reopening of his appeal. Finally, petitioner has not demonstrated that a fundamental miscarriage of justice will occur if the procedurally-defaulted claims alleged in Grounds One through Six are not addressed on the merits by this Court.

Accordingly, in sum, petitioner has waived the claims alleged in Grounds One through Six of the petition. Petitioner has not demonstrated cause for his numerous procedural defaults or that a fundamental miscarriage of justice will occur if the underlying merits of these claims are not reviewed by this Court. Moreover, petitioner is not entitled to habeas relief to the extent he claims in Ground Seven that: (1) the procedural bars set forth in Ohio R. App. P. 14(B), 26(A), 26(B) could not be relied on by the state appellate courts as adequate and independent state grounds precluding federal habeas relief; and (2) the state appellate courts failed to "follow" the exceptions to those rules in this case. Therefore, petitioner is not entitled to habeas corpus relief based on any of the seven claims asserted as grounds for relief in the petition.

18

**IT IS THEREFORE RECOMMENDED THAT:**

1.  Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 2) be DENIED with prejudice.

2.  A certificate of appealability should not issue with respect to the claims alleged in Grounds One, Two and Six of the petition, which this Court has concluded are waived and thus barred from review on procedural grounds; although in light of the Sixth Circuit's *White* decision, "jurists of reason" would find it debatable whether this Court is correct  in its procedural ruling" under the first prong of the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether these grounds for relief state a valid claim of the denial of a constitutional right that may be remedied a federal habeas proceeding under the second prong of the *Slack* test.  *See also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).  A certificate of appealability should issue with respect to petitioner's remaining claims found to be waived, which are alleged in Grounds Three through Five, because under the two-prong *Slack* test, "jurists of reason" would find it debatable both (1) whether this Court is correct in its procedural ruling in light of *White,* and (2) whether each of these grounds for relief state a valid claim of the denial of a constitutional right. Finally, a certificate of appealability should issue with respect to the claim alleged in Ground Seven, which was addressed on the merits and thus is not governed by *Slack,* only to the extent petitioner alleges that under *White,* this Court is incorrect in its procedural ruling that the Ohio courts relied on an adequate state ground which precludes federal habeas review of the merits of Grounds One through Six of the petition.

3.  With respect to any application by petitioner to proceed on appeal *in forma pauperis*, the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would be taken in "good faith," and therefore GRANT petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date: 6/17/04                                         s/Timothy S. Black

cbc

Timothy S. Black
United States Magistrate Judge

J:\BRYANCC\2004 habeas orders\02-425denypet.sol-waiv-reopn.wpd

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

————————————————————

Ted Marcum,
     Petitioner,

                                    Case No. 1:02cv425
         v.                         (Weber, J.; Black, M.J.)

Ohio Adult Parole Authority,
     Respondent.

## NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Black, United States Magistrate Judge, in the above-entitled habeas corpus action.  Pursuant to Fed. R. Civ. P. 72(b), which may be applied in this action under Rules 1 and 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof.   Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s).  Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections.   *See* Fed. R. Civ. P. 72(b).  A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal.  *See Thomas v. Arn,* 474  U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).