TED MARCUM,

        Petitioner,

-vs-                        Case No.    C-1-02-425

OHIO ADULT PAROLE AUTHORITY,

        Respondent,

## JUDGMENT IN A CIVIL CASE

| | |
|---|---|
| **Jury Verdict.** | This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict. |
| **X  Decision by Court.** | This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered. |

### IT IS ORDERED AND ADJUDGED

Petitioner's Petition for Writ of Habeas Corpus is Denied with prejudice. This case is Terminated on the docket of this Court.

Date:  July 12, 2007                   JAMES BONINI., CLERK

                               By:s/   Darlene Maury
                          Darlene Maury, Deputy Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

TED MARCUM,

                   Petitioner,

v.                                   C-1-02-425

OHIO ADULT PAROLE AUTHORITY,

                   Respondent.

## ORDER

      This matter is before the Court on the Report and Recommendation of the United States Magistrate Judge (doc. no. 35), Respondent's objection (doc. no. 36), and Petitioner's objections to the Report (doc. no. 39). In his Report and Recommendation the Magistrate Judge recommended that Petitioner's Petition for Writ of Habeas Corpus (doc. no. 2) be dismissed with prejudice and that a certificate of appealability issue on grounds three, four, five and seven of the Petition.

## STATE COURT PROCEEDINGS

      The details of Petitioner Ted Marcum's crimes are not material to the matter at hand, but an apt summary may be found in Marcum's Appeal from the Butler County Court of Common Pleas of August 7, 1996. Marcum was convicted on February 5, 1996 by a Butler County, Ohio jury on one count of defrauding a livery, with an attached prior conviction specification; one count of assault, also with an attached prior conviction specification; one count of disorderly conduct; and one count of resisting arrest. Petitioner was sentenced to concurrent terms of two to five years for the assault offense, one to five years for the defrauding a livery offense, ninety days for disorderly conduct, and thirty days for resisting arrest.

Petitioner's trial attorney filed a motion to vacate or correct sentence with the trial court, on March 4, 1996, which was rejected on March 8, 1996. With the assistance of new counsel, Petitioner filed a direct appeal, alleging three errors at trial, with the Ohio Court of Appeals, Twelfth Appellate District. None of these errors are raised in this Petition. On December 23, 1996, the Court of Appeals denied Petitioner's assignments of error. Petitioner next applied, *pro se*, to the Ohio Supreme Court which found no "substantial constitutional question," and dismissed Petitioner's appeal on April 9, 1997.

On May 1, 1997, Petitioner filed a "Motion To Enlarge Time On Filing Motion To Reopen Appeal On Reconsideration Pursuant To App. R. 26 (B)" with the Ohio Court of Appeals, Twelfth Appellate District. Therein, the Petitioner requested that the 90 days afforded to him by Rule 26(B) of the Ohio Appellate Rules of Procedure, during which he could apply for reopening of his direct appeal, run from the denial of his appeal to the Ohio Supreme Court rather than the denial of his direct appeal. Petitioner did not submit an application to reopen, and, on August 5, 1997, almost one month after the July 8, 1997 deadline that Petitioner requested, the Court of Appeals denied his motion. Petitioner claims that he did not receive a copy of this order until September 25, 1997, due to an error by his Case Unit Social Worker. Petitioner never appealed this decision to the Ohio Supreme Court. On September 18, 1998, more than one year later, he did file a motion requesting leave to submit a supplemental brief to the Ohio Court of Appeals. The Court of Appeals denied the motion on October 6, 1998, reasoning that the matter was concluded by its order of August 5, 1997. Petitioner appealed this decision to the Ohio Supreme Court. He raised several substantive claims including ineffective assistance of counsel and a claim that Rule 26(B) of the Ohio Rules of Appellate Procedure violated his Due Process and Equal Protection rights as provided by the United

2

States Constitution. Petitioner claimed the Rules did not provide sufficient time to submit an application, and discriminated between the wealthy and the poor by not providing an attorney to assist Petitioner in meeting the deadline for filing. The Ohio Supreme Court, again, found no substantial constitutional question, and declined to consider the claims on their merits.

## FEDERAL HABEAS PROCEEDINGS

On May 14, 1998, Petitioner submitted his first Petition for Writ of Habeas Corpus to this Court. He raised varying claims of ineffective assistance of counsel and essentially the same claim of unconstitutionality regarding Rule 26(B) of the Ohio Rules of Appellate Procedure that he raised on his appeal to the Ohio Supreme Court. The United States Magistrate Judge recommended a finding that all of Petitioner's claims were procedurally barred. Because of the uncertainty of the implications of *White v. Schotten*, 201 F.3d 743 (6th Cir. 2000), the Magistrate Judge further recommended that the Court dismiss the case without prejudice to allow Petitioner the opportunity to exhaust a potential delayed application for reopening on his claim that Ohio Rule of Appellate Procedure 26(B) was unconstitutional. On September 17, 2001, the Court adopted the Report and Recommendation, dismissing the petition without prejudice on exhaustion grounds. The dismissal order contained a provision tolling the running of the one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1) as of the date the Petition was filed, subject to two conditions: (1) that Petitioner pursue the state remedy within thirty days, and (2) that he file a renewed federal habeas petition within thirty days after exhausting his state remedies.

3

On October 16, 2001, within the requisite thirty-day period, Petitioner filed a "Delayed Application For Reconsideration and Reopening Of The Direct Appeal." The Ohio appellate court denied Petitioner's application on the ground that he had not shown good cause why it was not filed in a timely manner. The appellate court did, however, address Petitioner's claim regarding the unconstitutionality of Rule 26(B). It distinguished *White* by saying that ineffective assistance of counsel claims are only available in Rule 26(B) actions when the attorney has agreed to represent the petitioner. After appealing to the Ohio Supreme Court, the Petitioner's appeal was again dismissed "as not involving any substantial constitutional question" on May 1, 2002.

This Petition was received for filing June 7, 2002. The Respondent contends that Petitioner is time-barred because Petitioner failed to file his Petition by June 1, 2002 in compliance with the second condition of the tolling provision in the order to dismiss without prejudice. Respondent, therefore, argues that Petitioner is precluded from claiming equitable tolling of the one-year statute of limitations of 28 U.S.C.§ 2244(d). However, Petitioner signed the Petition May 29, 2002, and the delay appears to have resulted mostly from the prison cashier's delay in actually mailing it out. A prisoner's mailing is considered filed with the court at the time it is signed and turned over to the designated prison official for mailing. *Houston v. Lack*, 487 U.S. 266, 273 (1988). This Court finds the Petitioner to be in compliance with the conditions that it provided to allow equitable tolling.

4

## JURISDICTION

Although the Court has not found a problem with Petitioner's compliance with the second condition of its Order of Dismissal, the Court's jurisdiction over this case is at issue, in light of the United States Supreme Court's recent decision in *Bowles v. Russell*, 127 S.Ct. 2360 (2007). In making clear that United States Federal Courts do not have authority to create exceptions, such as equitable tolling, to "statute-based" periods for filing of notice, the Supreme Court forthrightly states: "We have repeatedly held that this statute-based filing period for civil cases is jurisdictional." *Id.* at 2365.

The one-year statute of limitations of 28 U.S.C.§ 2244(d) begins for Petitioner on August 5, 1997, the date on which the Ohio Court of Appeals rejected his appeal, and the judgment became final upon conclusion of the direct review. 28 U.S.C.§ 2244(d)(1)(A). Strictly construed as running from that date, the Petitioner would not have been eligible to submit his second Petition without the equitable tolling of this Court.

The Court believes that the instant situation is distinguishable from that of *Bowles*, however. The holding of *Bowles* concerns the appellant's failure to file his notice of appeal in accordance with the statutory time limit for filing notice. *Bowles*, 127 S.Ct. at 2362. The appellant in that case had failed to meet the *initial* deadline for filing his appeal, and the District Court attempted to extend that deadline, through equitable tolling, beyond the range provided for by the statute. The statutory time restriction in 28 U.S.C.§ 2244(d)(1) also involves an *initial* filing. The plain text states: "A 1-year period of limitation shall apply to an *application* for a writ of habeas corpus." (emphasis added). The statutory time limit provided by 28 U.S.C.§ 2244(d)(1) relates to the Petitioner's application. Once Petitioner has complied with this *initial* statutory time limit, the District Court has jurisdiction, and may provide for equitable tolling as this Court did in the present case.

5

This distinction between equitable tolling for the initial application for habeas corpus and equitable tolling granted after the Court has already taken jurisdiction was recognized in Justice Stevens's concurrence, in which Justice Souter joined, in *Duncan v. Walker*, 533 U.S. 167 (2001). In *Duncan*, Justice Stevens is careful to point out that the majority's strict interpretation of the A.E.D.P.A.'s one-year statute of limitations does not preclude equitable tolling for "the class of petitioners whose timely filed habeas petitions remain pending in district court past the limitations period, only to be dismissed after the court belatedly realizes that one or more claims have not been exhausted." *Id.* at 184. The Sixth Circuit adopted an equitable tolling procedure to accommodate that class of petitioners in *Palmer v. Carlton*, 276 F.3d 777, 781-782 (6th Cir.2002), and has consistently found such equitable tolling to be available. *See*, e.g., *Griffin v. Rogers*, 399 F.3d 626, 630-631 (6th Cir. 2005). This Court finds no reason to believe that the holding of *Bowles* undermines the capacity of District Courts to grant equitable tolling when Petitioner has met his initial filing deadline, and the Court later dismisses, without prejudice, to allow exhaustion of Petitioner's state claims. The Court will consider Petitioner's claims.

## APPLICABLE LAW

Because Marcum filed his Petition for Writ of Habeas Corpus after the effective date of the Anti-Terrorism and Effective Death Penalty Act of 1996 (A.E.D.P.A.), that statute governs the Court's review of this case. A writ of habeas corpus may not be granted under A.E.D.P.A. for any claim that was adjudicated on the merits in state court unless the adjudication of that claim- (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence

6

presented in the State court proceeding. 28 U.S.C. §§ 2254(d)(1)-(2). If the state court has not reached the merits of a claim, however, the District Court may be procedurally barred from considering such claim.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must first fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1) and (c). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See, e.g. Blackmon v. Booker*, 394 F.3d 399 (6th Cir. 2004).

If Petitioner fails to present his claim to the state's highest court, or commits some other procedural default to preclude review of the merits of Petitioner's claims by the state's highest court, and if no avenue of relief remains open or if it would otherwise be futile for Petitioner to continue to pursue his claims in the state courts, the claims are subject to dismissal with prejudice as waived. See, *e.g., Fuller v. McAninch*, 95 F.3d 1152 (6th Cir.1996). If, because of a procedural default, Petitioner has not had his claims considered by the state's highest court on the merits, and he can no longer present his claims to the state courts, he has waived the claims for purposes of federal habeas corpus review, unless he can demonstrate cause for the default and actual prejudice resulting from the alleged constitutional error, or that failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *See* also *Gulertekin v. Tinnelman-Cooper*, 340 F.3d 415, 418 (6th Cir. 2003).

7

After reviewing the Report and Recommendation of the Magistrate Judge, the District Judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. *Flournoy v. Marshall*, 842 F.2d 875, 877 (6th Cir. 1988).

## SUMMARY OF REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

The Petition for Writ of Habeas Corpus, currently under consideration, contains seven grounds upon which Petitioner bases his request for relief. In the Report and Recommendation (doc. no. 35), the Magistrate Judge recommended that the Court find that, under the A.E.D.P.A., the Court is procedurally barred from considering the merits of Petitioner's first six grounds. Additionally, the Magistrate Judge recommended that the seventh ground be denied on its merits.

Grounds (1) and (2): Petitioner states he was denied his right to timely raise a claim of ineffective appellate counsel due to an inadequate prison law library, his appellate attorney's delayed transmission of his trial transcript and his case worker's late conveyance of the Ohio Appellate Court's judgment on his application for reopening a direct appeal. The United States Magistrate Judge recommended the Court find that, as a matter of law, an inadequate prison library and lack of a trial transcript are not sufficient cause to excuse an untimely application. The Magistrate Judge further recommended that the Court find that, while late delivery of the appellate court's judgment may represent sufficient cause, the excuse lasts only as long as the cause itself and Petitioner did not apply in a timely manner after receiving the judgment.

8

Ground (3): Petitioner argues that Ohio Appellate Rule 26 (B) is unconstitutional because it does not provide for assignment of counsel to indigent appellants who are making claims of ineffective assistance of appellate counsel. The Magistrate Judge recommended the Court find that although *White v. Schotten* suggested that such a right may exist, subsequent decisions of both Ohio courts and the United States Court of Appeals for the Sixth Circuit Courts do not support that finding. Ohio courts before and after *White* have consistently held that applications for reopening are post-conviction matters, and, thus, not implicated by the Sixth Amendment right to counsel.

Grounds (4), (5) and (6): Petitioner contends that he was denied effective assistance of appellate counsel when his appellate attorney failed to: raise the issue of insufficient evidence on his conviction for defrauding a livery; raise the issue of ineffective assistance of counsel on the part of his trial attorney; and file a motion for reconsideration under Ohio Appellate Rules 14(B) and 26(A). The Magistrate Judge did not address the merits of these claims and recommended they be procedurally barred.

In Ground (7): Petitioner contends that Ohio Appellate Rules 14(B), 26(A) and 26(B) are neither "adequate" nor "independent" grounds to procedurally bar Petitioner's claims and that Ohio state courts fail to follow the "good cause" exception to procedural barring. The Magistrate Judge concludes that rules 14(B) and 26(A) were inapplicable to the Petitioner's case. Additionally, the Magistrate Judge recommends the Court find that the time limitations imposed by the State are self-evidently "independent" of the merits of Petitioner's claims and that they are "adequate," because they were both "firmly established" and "regularly followed" by the Ohio Courts at the time of Petitioner's applications. The Magistrate Judge concluded that Petitioner's claim that the Ohio Courts failed to follow the "good cause" exception is conclusory and unsupported, and recommended the Petition not be granted on this last Ground.

9

## OBJECTIONS TO REPORT AND RECOMMENDATION AND ANALYSIS

On September 16, 2004, the Petitioner filed fourteen objections in response to the Magistrate Judge's Report and Recommendation. The Court will now review and address each of Petitioner's objections *de novo*. In order to more clearly address each issue in turn, the Court has summarized each objection, and sequentially numbered each issue within the objection.

### Objection One: Magistrate Judge Lacks Authority

Petitioner argues that the Magistrate Judge lacks authority to participate in habeas corpus proceedings because he is not an Article III judge.

The Court addressed the issue raised in this objection in its Order of March 31, 2006 (doc. no. 42). As the Court stated, it has been clearly established that 28 U.S.C. § 636(b)(1)(A) provides the Magistrate Judge with the authority to hear and make recommendations on certain pretrial matters with review by the District Judge under the "clearly erroneous" standard. Additionally, 28 U.S.C. § 636(b)(1)(B) provides the Magistrate Judge with the authority to conduct hearings, including evidentiary hearings, and to submit to the District Judge proposed findings of fact and recommendations for the disposition by the District Judge of applications for post-trial relief made by individuals convicted of criminal offenses and of prisoner petitions challenging conditions of confinement. The District Judge shall then make a *de novo* determination on the findings to which the Petitioner objects, as discussed in the Standard of Review, *supra*.

This Objection is without merit.

10

**Objection Two: A.E.D.P.A. is Unconstitutional and May Not Be Applied to Petitioner**

Petitioner argues that the Antiterrorism and Effective Death Penalty Act of 1996 is unconstitutional because it violates the Separation of Powers and "practices in equity and at common law." Also, he contends it should not apply to Petitioner because he is neither a terrorist nor has he been sentenced to the death penalty.

The Court addressed this issue in its order of March 31, 2006 (doc. no. 42) as well. This Court finds that the Supreme Court of the United States has instructed us that the A.E.D.P.A. is constitutional. In fact, in *Felker v. Turpin*, 518 U.S. 651, 667 (1996), Justices Souter, Stevens and Breyer instruct that they have no difficulty with the conclusion that the A.E.D.P.A. is not on its face, or as it is applied here, unconstitutional. This Court agrees. Regarding the second issue, that the A.E.D.P.A. should not apply to Petitioner, 28 U.S.C. § 2254 (d) states plainly that it applies to applications for writ of habeas corpus by persons in custody pursuant to the judgment of a state court. The language applies equally to all applicants regardless of the crime for which they were convicted, or the punishment to which they were sentenced.

This Objection is without merit.

**Objection Three: Application was Filed Pursuant to Rules 14(B), 26(A) and 26(B)**

Petitioner claims his application for reopening was filed pursuant to Ohio Rules of Appellate Procedure 14(B) and 26(A), in addition to 26(B), because he cited all three as statutory authority in his petition. Because Petitioner makes a legally indistinguishable claim in Objection Four, the Court's analysis will follow that Objection.

11

**Objection Four: Standing to Challenge the "Extraordinary Circumstance" exception pursuant to Ohio Rule of Appellate Procedure 26(A)**

Petitioner claims he has "standing" to challenge Ohio Rules of Appellate Procedure 14(B) and 26(A) because he cited both in his application for reopening.

Upon a *de novo* review of the record in light of the objections of the Petitioner, the Court finds that Objections Three and Four have either been adequately addressed and properly disposed of by the Magistrate Judge or present no particularized arguments that warrant specific responses by this Court. The District Court adopts the recommendation on this issue.

The adequacy of Ohio Rule of Appellate Procedure 26(A) is not relevant to Petitioner's claim, because Petitioner has never submitted an Application for Reconsideration pursuant to Rule 26(A). A bare citation to the Rule in his "Delayed Application For Reconsideration and Reopening" of October 16, 2001 does not create an application for reconsideration. Rule 14(B), which allows for late filings only if "good cause" is shown, is relevant only as far as it informed the state court's decision to procedurally bar Petitioner's claim under Rule 26(B). The "adequacy" and "independence" of that "good cause" standard to bar Petitioner's substantive claims is addressed below.

These Objections are without merit.

**Objection Five: Rules 14(B), 26(A) and 26(B) are neither adequate nor independent**

The Petitioner states that Ohio Rules of Appellate Procedure 14(B), 26(A) and 26(B) are neither adequate nor independent (1) in light of *White v. Schotten*; (2) because state courts do not actually find "good cause" when it exists; (3) because state courts do not follow "good cause" as established by federal law; (4) because state courts do not find ineffective assistance of counsel when it exists; and (5) these rules rely on federal law.

12

This Court finds that Ohio Rule 26(B), and Rule 14(B) to the extent it is invoked, are adequate and independent as those terms are construed by the United States Court of Appeals for the Sixth Circuit. As stated above, Rule 26(A) of the Ohio Rules of Appellate Procedure is not at issue in this case. A state procedural rule is "independent" when it does not rely on federal law. *Coleman*, 501 U.S. at 732. The state court's decision to deny Petitioner's application due to timeliness clearly does not rely on federal law. A state rule is "adequate" when it is both "firmly established" and "regularly followed." *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991). The Magistrate Judge's analysis supports a finding that the rule was "firmly established" and "regularly followed" by the time of Marcum's first application for reopening in May of 1997. This analysis is affirmed in the more recent case, *Williams v. Bagley*, 166 Fed.Appx. 176 (6th Cir. 2006). In *Williams*, the Sixth Circuit discusses the "adequacy" of Rule 26(B) and finds that, "This court has previously held that Rule 26(B) has satisfied this test since at least 1996." *Id.* at 180.

Additionally, in issue (1), the Petitioner cites *White v. Schotten*, which suggests, in dicta, that the "good cause" requirement to overcome a procedural bar may not have been adequate at the time, due to a variety of interpretations by Ohio Courts regarding its meaning. The Sixth Circuit's more recent holding, in *Monzo v. Edwards*, 281 F. 3d 568, 577 (6th Cir. 2002), however, disagrees with the dicta of *White*. As the Magistrate Judge explains, the law regarding what constituted a "good cause" exception to the rule was well-settled when Petitioner made his first step toward reopening his appeal on May 1, 1997. The law was even more well-settled when, over a year later, in September 1998, Petitioner filed his Motion for Leave to File a Supplemental Brief in a second attempt to reopen his appeal and when in October 2001, he finally filed a delayed application for reopening with the Ohio Court of Appeals. The Magistrate Judge's analysis was confirmed when the

13

Sixth Circuit, in a judgment later that year, recognized *State v. Reddick*, 72 Ohio St.3d 88, 647 N.E.2d 784 (Ohio 1995) as firmly establishing Ohio law with regard to "good cause" in *Carpenter v. Edwards*, 113 Fed.Appx. 672, 677 (6th Cir. 2004).

In issues Two and Four, Petitioner makes the bare allegation that Rules 14(B) and 26(B) are inadequate because the state courts do not actually find "good cause" or find ineffective assistance of counsel when they actually exist. This claim is completely unsupported by the Petitioner, so there is no need for the Court to address it. In Issues Three and Five Petitioner suggests that the Ohio courts do not follow federal law regarding "good cause." The adequacy of the rules in regard to federal law are discussed extensively *supra*.

Accordingly, this Objection is without merit.

### Objection Six: Demonstrations of Good Cause

Petitioner claims that "good cause" to avoid the procedural barring of claims was demonstrated by (1) ineffective assistance of counsel at trial and on appeal; (2) ineffective assistance of counsel due to appellate counsel's failure to file an application for reopening or reconsideration; (3) lack of access to trial transcripts; (4) fluctuation of state laws that are not "firmly established;" (5) a change in state law that misled Petitioner regarding tolling of the statute of limitations on application for reopening; (6) Ohio Appellate Rules being unconstitutional because they do not provide for appointed counsel for applications for reopening or reconsideration; (7) Ohio Appellate Rules not being "adequate" or "independent;" (8) a case worker misplacing his mail; (9) an inadequate law library misleading Petitioner; and (10) not having counsel to help him submit an application to reopen.

14

Petitioner then claims the Magistrate Judge's finding of procedural default is incorrect for the following reasons: (11) Petitioner filed a "Motion To Enlarge Time On Filing Motion To Reopen Appeal On Reconsideration Pursuant To App. R. 26 (B)" and a Motion for Leave to File a Supplemental Brief" rather than an actual application because of: the change in statute of limitations law, an inadequate law library, no counsel being provided, Petitioner being indigent and incarcerated, prison official interference, and the fact that he was preparing numerous briefs with limited time and resources; (12) Petitioner did not file by the deadline he requested because: he was put in isolation, his papers were seized, he had no access to his papers or a law library; (13) Petitioner waited one year to file a supplemental brief because: Petitioner wanted to be deferential and ask leave of the court, and the court did not respond to his motion requesting an extension beyond July 8; (14) Petitioner failed to appeal the appellate court's denial of his request for extension of the July 8 deadline to the Ohio Supreme Court because he believed he was not allowed to file a delayed appeal pursuant to Rule 26, according to the Ohio Rules of Local Supreme Court Practice and Procedure.

Issues One through Ten reiterate each of Petitioner's claims of "good cause" for failure to comply with the statute of limitations for Ohio Rule of Appellate Procedure 26(B).

The Court finds that Issues Three through Nine have either been adequately addressed and properly disposed of by the Magistrate Judge or present no particularized arguments that warrant specific responses by this Court. Indeed, the Magistrate Judge's analysis of the constitutionality of Rule 26(B) regarding failure to provide counsel on an application to reopen, as raised in Issue Six, *supra*, has only been strengthened. At the time of the filing of the Report and Recommendation, the Sixth Circuit was preparing for an *en banc* rehearing of *Lopez v. Wilson*, 426 F.3d 339 (6th Cir. 2005). In that decision the court explicitly overruled *White*, holding that a motion to reconsider is

15

a post-conviction, collateral procedure to which the right to an attorney does not extend. *Id.* at 340.
*See also, Smith v. State of Ohio Dept. of Rehabilitation and Corrections*, 463 F.3d 426 (6th
Cir.2006), rehearing and rehearing *en banc* denied (Jan 19, 2007).

The plain language of 28 U.S.C.§ 2254 disallows Issues Two and Ten. The ineffectiveness
or incompetence of counsel during federal or state collateral proceedings shall not be a ground for
relief in a proceeding arising under section 2254. 28 U.S.C.§ 2254 (i) Because Petitioner was not due
assistance of counsel on his application to reopen, he cannot claim ineffective assistance of counsel
at that stage. *Coleman*, 501 U.S. at 752. The holding of *Lopez,* that Rule 26(B) is a collateral remedy,
disposes of these assertions of "good cause."

In Issue One, the Petitioner does not clarify and enumerate what type of ineffective assistance
of counsel on appeal and at trial constituted cause for his late filing, unless he is repeating Issue Two,
Three, or Ten. The Court does not find any evidence of ineffective assistance of counsel in the record
separate from those three Issues.

The finite duration of any excuse for lack of a filing undermines Petitioner's explanations
presented in Issues Eleven through Thirteen. As addressed by the Magistrate Judge, regarding
Petitioner's purported misapprehension of Ohio law, "[g]ood cause can excuse the lack of a filing
only while it exists, not for an indefinite period." See, *e.g., State v. Carter*, 70 Ohio St. 3d 642, 640
N.E.2d 811 (Ohio 1994) (per curiam). No continuous good cause existed for the, almost, entire year
between the time when the Petitioner received his denial from the Ohio Court of Appeals on
September 25, 1997, and the time of his next filing with the Ohio Courts, September 18, 1998.

16

Finally, Petitioner's claim in Issue Fourteen, that he failed to appeal the denial of the Ohio Court of Appeals because he believed he could not do so, is undercut by his own actions. Petitioner did, eventually, appeal to the Ohio Supreme Court more than a year later after the Ohio Court of Appeals denied his application for leave to submit a supplemental brief.

Accordingly, this Objection is without merit.

### Objection Seven: Applications under Rule 26 are Direct Appeal, not Post- Conviction

Petitioner states the application for reopening is a direct appeal, to which the right to an attorney attaches, and not a post-conviction remedy. He argues that the Magistrate Judge is wrong to not follow the precedent of *White*.

As discussed in Objection Six , *supra*, *White* has been explicitly overturned on this issue. A Petitioner has no right to counsel on an application to reopen under Ohio Appellate Rule 26(B).

The Objection is without merit.

### Objection Eight: Cause and Prejudice Demonstrated

The Petitioner claims he has shown "cause" and "prejudice" as demonstrated in his entire habeas application.

As discussed in Objection Six, *supra*, Petitioner has failed to establish cause to excuse the procedural defaults, and, consequently, the Court does not need to address whether Petitioner was prejudiced.

This Objection is without merit.

17

## Objection Nine: Fundamental Miscarriage of Justice

Petitioner claims he has shown a ruling against him would be a fundamental miscarriage of justice due to: (1) being denied the constitutional right to counsel; (2) the destroyed medical records that show Office Gross beat Petitioner and then lied about it at trial; (3) ineffective assistance of counsel at trial; (4) ineffective assistance of counsel on appeal; (5) an "excessive number of prior convictions paraded" to the jury; (6) an inadequate law library; (7) prison official interference; (8) the failure of Ohio to recognize "good cause" or "extraordinary circumstance" exceptions; (9) the fact that Rule 14(B), 26(A) and 26 (B) are neither adequate nor independent; (10) the fact that Petitioner's conviction for defrauding a livery is based on legally insufficient evidence; and (11) the lack of access to a trial transcript.

If Petitioner cannot demonstrate both cause and prejudice to excuse a procedural default in state court, the federal courts may only take jurisdiction if they determine that letting the conviction stand would result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. See *also*, *Smith v. State of Ohio Dept. of Rehabilitation and Corrections*,  463 F.3d 426 (6th Cir. 2006). In order to show a fundamental miscarriage of justice, Petitioner must show "by clear and convincing evidence that but for a constitutional error, no reasonable juror would have found" him guilty. *Sawyer v. Whitley*, 505 U.S. 333 (1992). There is no evidence alleged above nor in the record, as a whole, to show by clear and convincing evidence that no reasonable juror would have found Petitioner guilty. Petitioner's unsubstantiated allegation of perjury by the arresting officer does not undermine the verdicts of the jury in his case. No fundamental miscarriage of justice is found.

This Objection is without merit.

18

### Objection Ten: Merits of Case

Petitioner states that the claims should be heard on the merits because he has demonstrated cause, prejudice and that a fundamental miscarriage of justice would occur.

As discussed in Objections Six, Eight and Nine, *supra*, the Court does not find Petitioner has overcome the procedural bars blocking this Court from considering the merits of his claim.

This Objection is without merit.

### Objection Eleven: Failure of Counsel to File Application for Reopening.

Petitioner claims the ineffective assistance of counsel for failing to file an application for reconsideration pursuant to Rule 26(B).

As noted by the Magistrate Judge, this claim has been procedurally defaulted because it was never addressed substantively by the state courts of Ohio. As discussed in Objection Six, *supra*, the Court finds that "good cause" does not exist to excuse Petitioner's procedural default of this claim.

This Objection is without merit.

### Objection Twelve: Certificate of Appealability

Petitioner claims that habeas corpus relief should be granted on all seven claims and, failing that, a certificate of appealability should issue on all seven grounds, because each raises a "constitutional question debatable by a jurist of reason."

This Court adopts the Magistrate Judge's Recommendation that Grounds One through Six of the Petition be found to be procedurally barred, and that Ground Seven fails on its merits, but rejects the Magistrate's Recommendation that certificates of appealability be issued.

19

Regarding Grounds One through Six, this Court finds, in light of *Lopez*, that a "jurist of reason" would not find it "debatable whether this Court is correct in its procedural ruling," as is required by the first prong of the *Slack* test. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). As discussed *supra*, *White* has been overruled by *Lopez* and it is now the position of the United States Court of Appeals for the Sixth Circuit that no right to an attorney attaches to applications under Ohio Rule of Appellate Procedure 26(B). Thus, the first prong of the *Slack* test was not met on any of Petitioner's Grounds One through Six.

Regarding Ground Seven, a certificate of appealability shall not issue with respect to that claim for relief alleged in the Petition, which was addressed on its merits herein, because Petitioner has not made a substantial showing that such grounds for relief state "viable claim[s] of the denial of a constitutional right" or are "adequate to deserve encouragement to proceed further." *See Slack*, 529 U.S. at 475 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)); *See also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

### Objection Thirteen: Evidentiary Hearing

Petitioner requests an evidentiary hearing and appointment of counsel be granted.

The Petitioner has requested an Evidentiary Hearing in this objection, by a separate motion, (doc. no. 43) and by Motion for Telephone Conference (doc. no. 44). The request must be analyzed under the statutory language of 28 U.S.C. § 2254 (e). If the applicant has failed to develop the factual basis of a claim in State court proceedings, no evidentiary hearing shall be granted unless the claim relies on a new rule of constitutional law or a factual predicate that could not have been previously discovered. 28 U.S.C. § 2254 (e)(2)(A). Having met that burden, the applicant must also show that the facts underlying the claim would be sufficient to show by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty. 28 U.S.C. § 2254 (e)(2)(B).

20

The Court finds that the Petitioner has failed to develop the factual basis of his claim in state court proceedings. Grounds Three and Seven of Petitioner's Petition involve legal issues with no factual basis. The remaining grounds involve the conduct of Petitioner's appellate attorney and of a state prison official. The Petitioner defaulted his state court claims on these issues, and never developed a factual basis for them in state court hearings. The Court further finds that the Petitioner fails to fulfill the requirements of 28 U.S.C. § 2254 (e)(2)(A). The Petitioner has not presented an issue involving a new rule of constitutional law. The law surrounding the constitutional violations that Petitioner claims were long established at the time of his trial. His claims involve a factual predicate that could have been previously discovered and, in fact, were well known to him as they were occurring. Because the Petitioner did not meet the standards of 28 U.S.C. § 2254 (e)(2)(A), analysis of his claims under 28 U.S.C. § 2254 (e)(2)(B) are unnecessary. The Petitioner does not meet the requirements of 28 U.S.C. § 2254 (e)(2).  Accordingly, the Petitioners motions for evidentiary hearings and appointment of counsel are denied. Petitioner's request for a telephone conference is moot.

### Objection Fourteen: Habeas Corpus Ad Testificandum

Petitioner states that the Magistrate Judge summarily denied Petitioner's Motion for Habeas Corpus *Ad Testificandum* without opinion.

Under 28 U.S.C. § 2241 (c)(5), the writ of habeas corpus may extend to a prisoner if it is necessary to bring him into court to testify or for a trial. The Court does not find it necessary to bring Petitioner to testify. This motion is moot.

21

## CONCLUSION

Upon careful consideration of the Petitioner's objections, and upon conducting a *de novo* review of the record, especially in light of Petitioner's objections, the Court finds that, except as amended *supra*, that pursuant to Title 28 U.S.C. § 2254(b)(1) and (c), the Petitioner has procedurally defaulted Grounds (1)-(6) of his Petition. Petitioner has neither demonstrated cause for his numerous procedural defaults nor that a fundamental miscarriage of justice will occur if the merits of those claims are not reviewed by this Court. Moreover, Petitioner is not entitled to habeas relief to the extent he claims in Ground (7) that (1) the procedural bars set forth in Ohio Rule of Appellate Procedure 14(B), 26(A) and 26(B) could not be relied on by the state appellate courts as adequate and independent state grounds precluding habeas relief; and (2) the state appellate courts failed to follow the exceptions to those rules in this case. Therefore, Petitioner is not entitled to habeas corpus relief based on any of the seven claims asserted as grounds for relief in the Petition.

Further, the Court will not issue a certificate of appealability as discussed, *supra*. *See Slack*, 529 U.S. at 475 (2000) (citing *Barefoot*, 463 U.S. 880, 893 & n.4); *See also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). The uncertainty surrounding the implications of the *White* decision, which caused the Magistrate Judge to recommend issuance of certificates of appealablity, has been removed.

Accordingly, the Court accepts the factual findings and legal reasoning of the Magistrate Judge and hereby **ADOPTS** his Report and Recommendation in denying Grounds (1)-(7). The Court rejects the recommendation of the Magistrate Judge that any certificates of appealability should be issued. Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 is **DENIED WITH PREJUDICE.** The case is **TERMINATED** on the docket of this Court.

22

With respect to any application by Petitioner to proceed on appeal *in forma pauperis*, the Court does **CERTIFY** pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **DENIES** Petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman*, 117 F.3d 949, 952 (6th Cir. 1997).

**IT IS SO ORDERED.**

Herman J. Weber, Senior Judge
United States District Court

23

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

Ted Marcum,
    Petitioner

    vs                  Case No. 1:02cv425
                             (Weber, J.; Black, M.J.)

Ohio Adult Parole Authority,
    Respondent

## REPORT AND RECOMMENDATION

    Petitioner, who apparently currently resides in Hamilton, Ohio, as a parolee under the supervision of the Ohio Adult Parole Authority, has filed this action pro se for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (*See* Docs. 2, 26, 32). This matter is before the Court on the petition, respondent's return of writ, and petitioner's two-part memoranda in opposition to the return of writ, as well as the transcript of the challenged state criminal trial proceedings and additional documents submitted by respondent in accordance with this Court's Order issued March 11, 2004. (Docs. 2, 5, 6, 20-21, 27, 28).

### Factual And Procedural Background

    On November 15, 1995, petitioner was indicted by the Butler County, Ohio, grand jury on one count of assault as defined in Ohio Rev. Code § 2903.13(A), with an attached prior conviction specification; one count of defrauding a livery as defined in Ohio Rev. Code § 2913.41(A)(1), also with an attached prior conviction specification; one count of disorderly conduct as defined in Ohio Rev. Code § 2917.11(A)(1); and one count of resisting arrest as defined in Ohio Rev. Code § 2921.33(A). (Doc. 5, Ex. A). After a jury trial, petitioner was found guilty as charged. On February 15, 1996, petitioner was sentenced to concurrent terms of imprisonment of two (2) to five (5) years for the assault offense, one (1) to five (5) years for the defrauding a livery offense, ninety (90) days for disorderly conduct and thirty (30) days for resisting arrest. (*Id.*, Ex. B).

On March 4, 1996, petitioner's trial counsel filed a motion to vacate or correct sentence with the trial court, which was denied on March 8, 1996. (*Id.,* Exs. J-K).

Thereafter, with the assistance of new counsel, petitioner filed a timely appeal to the Ohio Court of Appeals, Twelfth Appellate District, in which he presented three assignments of error that are not alleged as grounds for relief in the instant action. (*Id.,* Ex. D). On December 23, 1996, the Court of Appeals affirmed the trial court's judgment. (*Id.,* Ex. F). Proceeding pro se, petitioner sought leave to appeal to the Ohio Supreme Court. (*Id.,* Ex. G). On April 9, 1997, the Ohio Supreme Court denied petitioner leave to appeal and dismissed the appeal "as not involving any substantial constitutional question." (*Id.,* Ex. I).

Within a month thereafter, on May 1, 1997, petitioner filed a pro se motion entitled "Motion To Enlarge Time On Filing Motion To Reopen Appeal On Reconsideration Pursuant To App. R. 26(B)" with the Ohio Court of Appeals, Twelfth Appellate District. (*Id.,* Ex. L). In the motion, petitioner argued that he should be allowed an extension of time to July 8, 1997 in which to file an application to reopen his appeal, because the Court of Appeals "lacked subject matter jurisdiction to entertain the application" for reopening while his notice of appeal and memorandum in support of jurisdiction were pending before the Ohio Supreme Court. (*Id.,* p. 2). He also contended his conviction was not "final" until the Ohio Supreme Court denied him leave to appeal and, therefore, that he should be permitted ninety (90) days from the Ohio Supreme Court's final entry in which to file an application for reopening under Ohio R. App. P. 26(B). (*Id.,* p. 4). Petitioner did not submit a reopening application by the requested extension deadline date of July 8, 1997, and on August 5, 1997, the Court of Appeals denied his motion. (*Id.,* Ex. M). In the petition, petitioner states that he did not receive a copy of the Court of Appeals' ruling until September 25, 1997, when the prison "Case Unit Social Worker" discovered petitioner's misplaced mail in her desk. (Doc. 2, p. 27). Petitioner did not attempt to appeal the Court of Appeals' decision to the Ohio Supreme Court. (*See id.,* pp. 27-28; Doc. 5, Brief, p. 3).

Instead, over a year later, on September 18, 1998, petitioner filed a motion in the Court of Appeals requesting leave to file a supplemental brief. (Doc. 5, Brief, p. 3). On October 6, 1998, the Court of Appeals denied the motion on the ground that the matter had been "concluded" by the court's previous entry of August 5, 1997 denying petitioner's application for reconsideration. (*Id.,* Ex. N). Petitioner sought leave to appeal this decision to the Ohio Supreme Court. In his memorandum in

support of jurisdiction, he asserted among other propositions of law numerous ineffective assistance of appellate counsel claims and, in his Fourteenth Proposition of Law, a claim that"Ohio State Appellate Rule 26(B) violates the Due Process and Equal Protection of the Law Clauses of the Fourteenth Amendment of the United States Constitution, when the statute denies potential persons on appeal enough time to 'reopen' their appeals–and the statute discr[i]minates between the 'rich' people and the 'poor.'" (*Id.*, Ex. O). On February 3, 1999, the Ohio Supreme Court dismissed the appeal "as not involving any substantial constitutional question." (*Id.*, Ex. P).

On May 14, 1998, a few months before filing his motion in the state appellate court requesting leave to file a supplemental brief in the reopening matter, petitioner filed a federal habeas corpus petition with this Court alleging twenty-two grounds for relief. (*Id.*, Ex. Q). In the petition, petitioner contended in a number of grounds that he was denied effective assistance of appellate counsel. (*See id.*, pp. 8-9, 12-14, 18-20, Grounds Five, Six, Ten, Eleven, Thirteen, Seventeen, Eighteen, Nineteen, Twenty). In Ground Fourteen, he also asserted essentially the same claim quoted above, *see supra* p. 3, which was alleged as the fourteenth proposition of law in his memorandum in support of jurisdiction to the Ohio Supreme Court on appeal from the Ohio Court of Appeals' October 6, 1998 Entry denying his motion to file a supplemental brief. (*See id.*, p. 15).

On May 21, 2001, recently retired United States Magistrate Judge Jack Sherman, Jr. issued a Report and Recommendation, wherein it was determined that although petitioner had procedurally defaulted all of his grounds for relief in the state courts, the petition nevertheless was subject to dismissal without prejudice on exhaustion grounds because the state remedy of a successive application for reopening was "possibly available" to pursue relief on the claim alleged in Ground Fourteen of the petition. (*See id.*, Ex. S). On September 17, 2001, the Court adopted the report and recommendation and dismissed petitioner's federal habeas petition without prejudice to refiling after petitioner exhausted the possibly available state remedy. (*See id.*, Ex. T). The dismissal order contained a provision tolling the running of the one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1) as of the date the petition was filed, subject to two conditions: (1) that petitioner pursue the state remedy within thirty days, and (2) that he file a renewed federal habeas petition within thirty days after exhausting his state remedies. (*Id.*, p. 2).

On October 16, 2001, within the requisite thirty-day period set forth as the first condition in the tolling order, petitioner filed a "Delayed Application For

3

Reconsideration And Reopening Of The Direct Appeal" in the Ohio Court of Appeals. (*Id.*, Ex. V). In the application, petitioner asserted the following assignments of error: (1) he was denied his constitutional "right to effective appellate review . . . when appellate counsel refused to send [him] the trial court transcript record in a timely fashion, so as to enable [him] to raise claims of ineffective assistance of counsel in a timely application for reopening;" (2) he was denied access to the court and effective assistance of counsel when prison officials lost the Ohio Court of Appeals' entry denying his request for an enlargement of time to prepare a reopening application, which precluded him from further appealing to the Ohio Supreme Court; (3) he was denied his constitutional right to counsel on direct appeal due to the absence of any provision for assignment of counsel in Ohio R. App. P. 26(B); (4) he was denied effective assistance of counsel when his attorney on direct appeal failed to raise the claim that his conviction for defrauding a livery was based on insufficient evidence; (5) he was denied effective assistance of counsel when his attorney on direct appeal failed to raise ineffective assistance of trial counsel claims; and (6) he was denied effective assistance of counsel on direct appeal "due to counsels' failure to file a delayed motion for 'reconsideration' under Ohio App. R. 14(B) and 26(A)." (*Id.*, pp. 4-10).

On January 14, 2002, the Court of Appeals denied petitioner's reopening application on the ground that petitioner had not shown "good cause as to why the application was not filed in a timely manner." (*Id.*, Ex. X, Opinion, p. 5). Despite its determination that the application was untimely filed, the court addressed the issue which had caused the district court to dismiss petitioner's federal habeas petition without prejudice on exhaustion grounds—i.e., whether petitioner was denied his constitutional right recognized in *White v. Schotten*, 201 F.3d 743 (6th Cir.), *cert. denied*, 531 U.S. 940 (2000), "to appointed counsel to assist in the filing of motion for delayed reopening under App.R. 26(B)." (*See id.*). The court held that *White* was inapposite because the case only "stands for the proposition that where counsel participates in the filing of an App.R. 26(B) application and fails to complete the filing in a timely manner, the applicant's constitutional right to the effective assistance of counsel in the filing of such[] an application precludes the dismissal of a federal habeas corpus claim on the basis of a procedural default." (*Id.*, pp. 6-7). The court went on to find that *White* "does not require the appointment of counsel for the initial filing of an application to reopen under App.R. 26(B)," as petitioner contended, but rather "merely states that *[]if* an applicant is represented by counsel" in a reopening matter, such counsel must provide effective assistance in the filing of the application. (*Id.*, p. 7) (emphasis in original).

4

Petitioner sought leave to appeal to the Ohio Supreme Court . (*Id.*, Ex. Y). On May 1, 2002, the Ohio Supreme Court entered an order summarily dismissing the appeal "as not involving any substantial constitutional question." (*Id.*, Ex. Z).

The instant 62-page petition was received for filing on June 7, 2002, within a week after the expiration of the requisite thirty-day period set forth as the second condition for tolling the one-year statute of limitations during the pendency of petitioner's first federal habeas action. (*See* Doc. 2). Petitioner alleges the following grounds for relief, which are quoted verbatim from the petition:

> **Ground One:** Petitioner was denied . . . his Sixth and Fourteenth Amendment rights under the United States Constitution and effective appellate review on raising ineffective assistance of appellate counsel claims, when appellate counsel refused to provide to appellant . . . the trial court transcript record of proceedings, in a timely fashion, so as to have enabled petitioner to timely file a pro se application for reconsideration and reopening of his direct appeal, pursuant to Ohio Appellate Procedural Rule 26(B).

> **Ground Two:** Petitioner was denied . . . his Sixth and Fourteenth Amendment rights under the United States Constitution based on misconduct committed by prison officials, and inadequate law library f[a]cilities, which prejudicially denied petitioner . . . access to the courts; and to effective assistance of counsel; and to effectively represent himself pro se.

> **Ground Three:** Appellant was prejudicially denied . . . his Sixth and Fourteenth Amendment rights on direct appeal proceedings, due [to] the fact that Ohio Appellate Procedural Rule 26(B) fails to contain any provision for assignment of counsel on behalf of indigent appellant[]s, seeking to reopen their appeals, for filing a timely application for reopening.

> **Ground Four:** Petitioner was prejudicially denied . . . his Sixth and Fourteenth Amendment rights to effective assistance of appellate counsel, on direct appeal, due to appellate counsels' failure to raise a claim that appellant's conviction for "defrauding a livery," is based on insufficient evidence; is contrary to law; and is void.

5

**Ground Five:** Petitioner was prejudicially denied . . . his Sixth and Fourteenth Amendment right to effective assistance of counsel on direc[t] appeal, due to appellate counsels' failure to litigate claims that trial counsels' assistance was prejudicially ineffective, which deprived appellant of his right to a fair trial.

**Ground Six:** Petitioner was prejudicially denied . . . his Sixth and Fourteenth Amendment right to effective assistance of counsel on direct appeal proceedings, due to appellate counsels' failure to file a motion for "reconsideration," under Ohio App. P. R. 14(B) & 26(A).

**Ground Seven:** Petitioner's Sixth and Fourteenth Amendment rights under the United States Constitution [were] violated, when 1) Ohio App. P. R. 14(B), 26-(A) & (B), are not an "adequate" or "independent" state court remedy, under federal and state law, to preclude federal habeas corpus relief; and 2) based on the fact that the Ohio state court[]s fail to follow the "good cause" exception to the rule under Ohio App. P. R. 26(B); and the "extraordinary circumstance" exception under Ohio App. P. R. 14(B) and 26(A).

(*Id.*, pp. 20, 25, 30, 36, 39, 47, 55).

In the return of writ, respondent contends the petition is time-barred because petitioner failed to comply with the second condition of the tolling provision contained in the September 17, 2001 Order dismissing his prior federal habeas petition without prejudice on exhaustion grounds, and, therefore, is precluded from claiming entitlement to equitable tolling of the one-year statute of limitations set forth in 28 U.S.C. § 2244(d) during the pendency of that action. (Doc. 5, Brief, pp. 8-21). As respondent points out, petitioner did not submit the instant petition for filing until after the 30-day period for filing a renewed petition under the second tolling condition expired. However, because the petition signed by petitioner on May 29, 2002 was received by the Court the following week and it appears the delay in filing was due in large part to the prison cashier's delay in preparing and signing the certification in support of petitioner's *in forma pauperis* application (*see* Doc. 1; Doc. 2, p. 62), the Court will assume, without deciding, that the statute of limitations was equitably tolled during the pendency of the prior federal habeas petition and, therefore, that the instant petition is not time-barred. *Cf. Duncan v. Walker*, 533 U.S. 167, 184 (2001) (Stevens, J., concurring) (although a federal habeas petition cannot toll the one-year

statute of limitations under the statutory tolling provision set forth in 28 U.S.C. § 2254(d)(2), the federal court's equitable powers may be used to toll the limitations period for "the class of petitioners whose timely filed habeas petitions remain pending in district court past the limitations period, only to be dismissed after the court belatedly realizes that one or more claims have not been exhausted").

This case does not present any exhaustion issue. Therefore, the Court will proceed to address petitioner's grounds for relief in light of the parties' arguments asserted in the petition, return of writ, and "traverse" briefs.

## OPINION

### Petitioner Has Waived The Claims Alleged In Grounds One Through Six, And His Arguments Against A Finding Of Waiver, Which Are Alleged As A Separate Claim For Relief In Ground Seven, Lack Merit

In Grounds One through Three of the petition, petitioner contends he was precluded from filing a timely application to reopen his appeal under Ohio R. App. P. 26(B) due to: (1) his appellate counsel's refusal to provide him with a copy of the trial transcript in a timely manner (Ground One); (2) inadequate prison law library materials and the "misconduct" of prison officials in the handling of his legal mail, which denied him access to the courts (Ground Two); and (3) the absence of any provision in Ohio R. App. P. 26(B) for the appointment of counsel to assist in the filing of a timely application for reopening (Ground Three).[1] (*See* Doc. 2, pp. 20-35). In Grounds Four

---

[1] In a recent panel decision, the Sixth Circuit held that a petitioner, who claimed his constitutional rights were violated by the Ohio Court of Appeals in a reopening proceeding brought pursuant to Ohio R. App. P. 26(B), was unable to demonstrate under the applicable standard of review set forth in 28 U.S.C. § 2254(d), as amended in 1996 by the Antiterrorism and Effective Death Penalty Act (AEDPA), that the state appellate court's challenged ruling, after "the stage in the appellate process at which the claims have once been presented by a lawyer and passed by an appellate court," *Douglas v. California*, 372 U.S. 353, 356 (1963), was contrary to or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court. *See Lopez v. Wilson*, 355 F.3d 931, 938-41 (6th Cir. 2004). The *Lopez* panel decision was recently vacated when a rehearing en banc was granted in that case. *Lopez,* 366 F.3d 430 (6th Cir. 2004). It is noted, however, that if the panel decision had not been vacated, petitioner would be unable to prevail on the merits of the claims raised in his first three grounds for relief.

7

through Six of the petition, petitioner alleges he was denied effective assistance of appellate counsel in violation of the Sixth Amendment when his attorney on direct appeal (1) failed to assert as assignments of error that his "defrauding a livery" conviction is based on insufficient evidence (Ground Four) and that his trial counsel provided ineffective assistance (Ground Five); and (2) failed to file a motion for reconsideration under Ohio R. App. P. 14(B) and 26(A) (Ground Six). (Doc. 2, pp. 36-55). In the return of writ, respondent argues that petitioner has waived these claims due to his procedural defaults in the state courts. (Doc. 5, Brief, pp. 22-24).

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must first fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c); *see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir.), *cert. denied,* 474 U.S. 831 (1985).

If petitioner fails to fairly present his claims through the requisite of levels of state appellate review to the state's highest court, or commits some other procedural default to preclude review of the merits of petitioner's claims by the state's highest court, and if no avenue of relief remains open or if it would otherwise be futile for petitioner to continue to pursue his claims in the state courts, the claims are subject to dismissal with prejudice as waived. *See Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989). If, because of a procedural default, petitioner has not had his claims considered by the state's highest court on the merits and he can no longer present his claims to the state courts, he has waived the claims for purposes of federal habeas corpus review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional errors, or that failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In this case, as discussed in the Report and Recommendation to dismiss

8

petitioner's first federal habeas petition, petitioner committed a number of procedural defaults when he initially attempted to reopen his direct appeal to assert ineffective assistance of appellate counsel claims. (*See* Doc. 5, Ex. S, pp. 9-10). First, when petitioner filed his motion on May 1, 1997 to extend the time for filing an application for reopening, he committed a procedural default by failing to file by the requested extension deadline date of July 8, 1997 the actual application setting forth the alleged claims of error that occurred during the direct appeal proceedings. Petitioner committed a second procedural default when he did not appeal the Ohio Court of Appeals' denial of his motion for enlargement of time to the Ohio Supreme Court. Finally, when petitioner tried a second time to reopen the appeal over a year later in September 1998, he committed a third procedural default because he only filed a motion requesting leave to file a supplemental brief and again did not submit an actual application for reopening setting forth the alleged claims of error that occurred during the direct appeal proceedings. Indeed, petitioner did not raise any claims to be addressed in a reopening matter until he filed his memorandum in support of jurisdiction to the Ohio Supreme Court from the Court of Appeals' October 6, 1998 denial of his motion for leave to file a supplemental brief. However, as determined in the Report and Recommendation issued in the prior habeas action, "the Ohio Supreme Court was precluded from considering the substance of those claims because petitioner had not presented them to the Ohio Court of Appeals. *See* Ohio Const, art. IV, § 2(B)(2); *State v. Jones,* 211 N.E.2d 198, 199 (Ohio 1965), *cert. denied,* 383 U.S. 918, 951 (1966); *see also Leroy,* 757 F.2d at 99; *Fornash v. Marshall,* 686 F.2d 1179, 1185 n.7 (6th Cir. 1982), *cert. denied,* 460 U.S. 1042 (1983). Moreover, the Ohio Supreme Court was precluded from considering the substance of the claims, because the appeal in which they were raised was from an order denying petitioner leave to file a supplemental brief in a matter that had essentially concluded over one year before when the Court of Appeals denied petitioner an extension of time in which to file an application for reopening of the appeal." (Doc. 5, Ex. S, p. 10).

In the Report and Recommendation, which was later adopted as an order by the district judge, the Court concluded that petitioner's claims were subject to dismissal with prejudice on waiver grounds because petitioner had not demonstrated cause for his numerous procedural defaults. (*Id.,* pp. 10-14, 16). However, concerned about the implications of the Sixth Circuit's decision in *White v. Schotten,* 201 F.3d 743 (6th Cir.), *cert. denied,* 531 U.S. 940 (2000), issued a year after the Ohio Supreme Court entered its final order on February 3, 1999 rejecting petitioner's then-latest attempt to reopen his appeal, *see supra* p. 4, the Court recommended that the petition be dismissed without prejudice so that petitioner could exhaust the "possibly available"

9

state remedy of a successive reopening application with respect to one claim alleged in Ground Fourteen that petitioner was denied his constitutional rights to equal protection and due process by Ohio R. App. P. 26(B), which does not contain a provision for appointment of counsel for indigent applicants seeking to reopen their direct appeals. (*Id.*, pp. 15-16; *see also* Ex. T). In so ruling, the Court stated: "[I]f the Ohio courts do not adopt the interpretation favoring the availability of the state remedy or otherwise fail to consider petitioner's claim on the merits, . . . any subsequent habeas corpus petition filed by petitioner pursuant to 28 U.S.C. § 2254 faces dismissal with prejudice on waiver grounds." (*Id.*, Ex. S, p. 16).

Petitioner did subsequently file a delayed application for reopening as specified in the exhaustion dismissal order, in which he presented the claims alleged in Grounds One through Three, as well as the ineffective assistance of appellate counsel claims alleged in Grounds Four through Six, of the petition. However, finding *White* to be inapposite, the Ohio courts refused to address the merits of these claims on the state procedural ground that the application was not filed "in a timely manner" and petitioner had not shown "good cause" for his delay in filing. (*See id.*, Ex. X, Opinion, pp. 5-7; *see also* Ex. Z).

It is well-settled that, on federal habeas corpus review, a court may be barred from considering an issue of federal law from a judgment of a state court if the state judgment rests on a state-law ground that is both "independent" of the merits of the federal claim and an "adequate" basis for the state court's decision. *Harris,* 489 U.S. at 260-62  The adequate and independent state ground doctrine has been applied to state decisions refusing to address the merits of a federal claim because of violations of state procedural rules. *Id.* at 261; *Sykes,* 433 U.S. at 86-87; *see also McBee,* 763 F.2d at 813. An adequate and independent finding of procedural default will preclude habeas corpus review of the federal claim, absent the requisite showing of "cause" and "prejudice" or that failure to consider the federal claim will result in a "fundamental miscarriage of justice." *See supra* pp. 8-9; *Coleman,* 501 U.S. at 750; *Harris,* 489 U.S. at 262.

The procedural default does not bar consideration of a federal claim on habeas corpus review unless the last state court rendering a judgment in the case "clearly and expressly" states that its judgment rests on a state procedural bar. *Harris,* 489 U.S. at 263. In cases where the last state court to render a reasoned opinion on the claim explicitly relies on a procedural bar, the court will presume that a later unexplained order did not silently disregard the procedural default and consider the merits of the

10

claim. *Ylst v. Nunnemaker,* 501 U.S. 797, 803-04 (1991). In this case, it is clear the state court of appeals denied the delayed application for reopening on state procedural timeliness grounds, and the Ohio Supreme Court's later unexplained decision summarily dismissing the appeal for lack of a substantial constitutional question must be presumed to rely on the same procedural default. *See Taqwiim v. Johnson,* 229 F.3d 1154 (table), No. 99-3425, 2000 WL 1234322, at \*\*3 (6ᵗʰ Cir. Aug. 22, 2000) (unpublished) (citing *Levine v. Torvik,* 986 F.2d 1506, 1517 n.8 (6ᵗʰ Cir.), *cert. denied,* 509 U.S. 907 (1993), and *Ylst,* 501 U.S. at 803-04), *cert. denied,* 531 U.S. 1089 (2001).

In Ground Seven of the petition, petitioner essentially contends the state-law ground relied on by the Ohio Court of Appeals in denying his delayed application for reopening under Ohio R. App. P. 26(B) was not an adequate and independent basis for the court's decision.[2] (Doc. 2, pp. 55–61). It goes without saying that a state procedural timeliness rule, such as was invoked here, constitutes a state-law ground that is "independent" of the federal claim. Therefore, the inquiry must focus on the rule's adequacy. A state procedural rule is adequate if it was "firmly established" and "regularly followed" by the time it was applied in this case. *Monzo v. Edwards,* 281 F.3d 568, 577 (6ᵗʰ Cir. 2002) (citing *Ford v. Georgia,* 498 U.S. 411, 423-24 (1991), and *Johnson v. Mississippi,* 486 U.S. 578, 587 (1988)). In 1992, the Ohio Supreme Court held in *State v. Murnahan,* 584 N.E.2d 1204 (Ohio 1992), that ineffective assistance of appellate counsel claims must be raised in a motion for reconsideration to the Ohio Court of Appeals, as opposed to a petition for post-conviction relief to the trial court. *See Monzo,* 281 F.3d at 577; *see also Coleman v. Mitchell,* 244 F.3d 533, 539 (6ᵗʰ Cir.), *cert. denied,* 534 U.S. 977 (2001). On July 1, 1993, Ohio R. App. P.

---

[2]He also argues in Ground Seven that Ohio R. App. P. 14(B) and 26(A) do not constitute an "'adequate' or 'independent' state court remedy" sufficient to preclude federal habeas review of the merits of his claims, and that his constitutional rights were violated by the Ohio Court of Appeals' failure "to follow the 'extraordinary circumstance' exception under Ohio App. P. R. 14(B) and 26(A)." (Doc. 2, pp. 55-61). This argument has no relevance to the case-at-hand because no delayed application for reconsideration pursuant to Ohio R. App. P. 26(A) was ever filed for the Ohio Court of Appeals to consider and thus reject as untimely filed. Moreover, Ohio R. App. P. 14(B), which permits the state appellate court to enlarge filing deadline times for "good cause shown," is relevant only to the extent it informed the state court's procedural ruling under Ohio R. App. P. 26(B). As discussed *infra* pp. 12-18, the Ohio Court of Appeals' application of the "good cause" standard set forth in Ohio R. App. P. 14(B), as the basis for denying petitioner's delayed application for reopening under Ohio R. App. P. 26(B), constituted an adequate and independent state ground which precludes review of the merits of petitioner's claims alleged in Grounds One through Six.

11

26(B) was amended to provide that a "defendant in a criminal case may apply for reopening of the appeal from the judgment of conviction and sentence, based' on a claim of ineffective assistance of appellate counsel." Ohio R. App. P. 26(B)(1); *see also Coleman,* 244 F.3d at 539-40. Pursuant to this amended rule, an application for reopening must be filed "within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time." Ohio R. App. P. 26(B)(1) and 26(B)(2)(b). Therefore, by the time petitioner's direct appeal concluded in December 1996, the ninety-day deadline for filing a timely application for reopening was firmly established. Moreover, by the time this time requirement was applied in this case, it appears the rule was "regularly followed" by the Ohio appellate courts in denying applications for delayed reopening of appeals.

The closer question posed here is whether the "good cause" requirement for excusing non-compliance with the 90-day deadline constitutes an adequate state procedural ground. In *White,* 201 F.3d at 751, the Sixth Circuit discussed in dicta Ohio R. App. P. 26(B)'s "good cause" requirement as applied in Ohio in the years 1993 and 1994. *See Monzo,* 281 F.3d at 577-78. Specifically, the court stated:

> A review of the Ohio court of appeals cases attached to Petitioner's brief reveals that the state courts have not achieved consensus on what constitutes "good cause" to excuse non-compliance with Rule 26(B). Nonetheless, we recognize that the rule is relatively new and acknowledge that it may take some time for the Ohio courts to achieve consensus.

*Monzo,* 281 F.3d at 578 (quoting *White,* 201 F.3d at 751 (citations omitted)).

In *Monzo,* however, the Sixth Circuit rejected the argument that there was no firmly established or regularly followed standard for applying the "good cause" requirement to an application for reopening that was denied in June 1998. The court reasoned:

> Our review of Ohio law leads us to conclude that there was sufficient guidance as to what would not constitute good cause at the time the rule was applied in this case. We do not dwell on the decisions issued shortly after the *Murnahan* decision, as the Ohio courts have had several years since then to consider the "good cause" requirement. . . . The

Ohio Supreme Court shed light on the appropriate focus for determining good cause under Rule 26(B) in *State v. Reddick,* 72 Ohio St.3d 88, 647 N.E.2d 784, 786 (1995).... That is, the Court in *Reddick* stressed that:

> Neither *Murnahan* nor App.R. 26(B) was intended as an open invitation for persons sentenced to long periods of incarceration to concoct new theories of ineffective assistance of appellate counsel in order to have a new round of appeals. Rather, both were intended to allow the belated presentation of colorable claims that defendants/appellants were prevented from presenting timely by particular circumstances. Lack of effort or imagination, and ignorance of the law, are not such circumstances and do not automatically establish good cause for failure to seek timely relief.

647 N.E.2d at 786. Further, "issues of ineffective assistance of appellate counsel must be raised at the first opportunity to do so." *State v. Williams,* 74 Ohio St.3d 454, 659 N.E.2d 1253, 1254 (1996). *See also State v. Franklin,* 72 Ohio St.3d 372, 650 N.E.2d 447, 448 (1995) (ignorance of the law does not justify untimely filing of a motion to reopen)[.] . . . Thus, we find the state courts relied on an adequate and independent state procedural ground to foreclose review of petitioner's *Murnahan* claim.

*Monzo,* 281 F.3d at 578 (some citations omitted).

In this case, petitioner first indicated an interest in seeking a reopening of his appeal in May 1, 1997, when he filed his motion for extension of time in which to file a reopening application, long after the Ohio Supreme Court issued its decisions in *Reddick, Williams,* and *Franklin* setting forth standards for applying the "good cause" requirement. The law was even more well-settled when over a year later, in September 1998, petitioner filed his motion for leave to file a supplemental brief in a second attempt to reopen his appeal, and when in October 2001, he finally filed

13

a delayed application for reopening with the Ohio Court of Appeals.

In 1997, when he first requested the extension of time to file a reopening application, petitioner contended as "good cause" for his request that he believed the 90-day filing period did not begin to run until after the Ohio Supreme Court denied him leave to appeal from the Ohio Court of Appeals' direct appeal decision. (*See* Doc. 5, Ex. L). There is no indication in the record whether petitioner asserted any "good cause" arguments when, over a year later, he filed his second motion for leave to file a supplemental brief with the Ohio Court of Appeals. Most recently, in his latest attempt to reopen his appeal, petitioner argued as "good cause" for his untimely filing that his counsel on direct appeal did not provide him with a copy of the trial transcript in a timely manner; that inadequate materials in the prison law library misled him about the requirements for filing a timely reopening application; that his delayed receipt of the Ohio Court of Appeals' August 5, 1997 denial of his motion for extension of time precluded him from appealing further to the Ohio Supreme Court; and that Ohio R. App. P. 26(B) failed to provide for the appointment of counsel, who would have ensured the timely filing of a reopening application on his behalf. (*Id.,* Ex. V). Petitioner has reiterated these most recent "good cause" arguments as claims of constitutional error in Grounds One through Three of the instant petition. It is further presumed that these arguments undergird petitioner's conclusory claim alleged in Ground Seven that the Court of Appeals failed "to follow the 'good cause' exception to the rule under Ohio App. P. R. 26(B)." (Doc. 2, p. 55).

The Court concludes that the explanations provided by petitioner to establish "good cause" are insufficient to explain how petitioner was "prevented . . . by particular circumstances," *Reddick,* 647 N.E.2d at 786, from presenting his claims in a timely application for reopening under Ohio R. App. P. 26(B). Since *Reddick,* the Ohio courts have consistently rejected arguments such as are asserted by petitioner here that "good cause" may be shown by inadequate access to the trial record or legal resources and lack of knowledge of the remedy provided by Ohio R. App. P. 26(B). *See, e.g., State v. Sweeney,* 723 N.E.2d 655, 656-58 (Ohio Ct. App. 1999) (per curiam) (and numerous cases cited therein) ("good cause" was not established by conclusory assertion that petitioner had not obtained access to the trial transcript and only had limited access to a law library); *State v. Bruce,* No. 70982, 2002 WL 664014, at *2-3 (Ohio Ct. App. Apr. 9, 2002) (unpublished) (and numerous cases cited therein) (rejecting contentions that defendant's difficulty in obtaining the transcript and other parts of the record and incarceration in a prison

14

outside Ohio constituted "good cause" for his delay in filing a reopening application), *appeal dismissed,* 770 N.E.2d 1050 (Ohio 2002); *see also Abreu v. Huffman,* 27 Fed.Appx. 500, 505 (6th Cir. Nov. 13, 2001) (per curiam) (not published in Federal Reporter) (rejecting argument that denial of access to trial transcript "justified dilatory Rule 26(B) filings" given numerous, cited "intermediate state appellate court decisions . . . universally conclud[ing] 'that the inability to obtain transcripts is not a sufficient basis for the untimely filing of an application for reopening'"), *cert. denied,* 535 U.S. 1120 (2002); *cf. Houston v. Anderson,* 129 F.3d 1264 (table), No. 96-4386, 1997 WL 693552 (6th Cir. Oct. 31, 1997) (unpublished) (holding that petitioner's inability to obtain trial transcript did not excuse his procedural default in failing to filing a timely application to reopen his appeal), *cert. denied,* 525 U.S. 850 (1998).

Moreover, despite his purported misapprehension about the Ohio Court of Appeals' authority to rule on a reopening application while his appeal was pending before the Ohio Supreme Court, petitioner could have filed such an application alleging ineffective assistance by his appellate counsel during the pendency of his appeal before the Ohio Supreme Court. Rule II, § 2(D)(1), of the Rules of Practice of the Supreme Court of Ohio, as amended effective April 1, 1996, expressly provides that the Ohio Court of Appeals retains jurisdiction while an appeal is pending before the Ohio Supreme Court to rule on an application for reopening filed pursuant to Ohio R. App. P. 26(B). *See State v. Ayala,* 676 N.E.2d 1201, 1202 (Ohio Ct. App. 1996). In any event, even assuming, *arguendo,* that this "good cause" argument raised in petitioner's initial request for enlargement of time has merit in light of petitioner's subsequently asserted claim that materials in the prison law library were inadequate to inform him of the Ohio Court of Appeals' retained jurisdiction, petitioner provided no explanation as to why he failed to file a reopening application by the requested extension deadline date of July 8, 1997; why he failed to file an appeal to the Ohio Supreme Court from the August 5, 1997 denial of his extension motion;[3] and why he waited until over a year later, on

_____

[3]Petitioner has claimed that he did not receive notice of the Ohio Court of Appeals' August 5, 1997 ruling until September 25, 1997, when a prison social worker discovered she had misplaced his legal mail. (Doc. 2, p. 27). Under Ohio law, petitioner was permitted 45 days from entry of the judgment being appealed to perfect an appeal to the Ohio Supreme Court. Rule II, § 2(A)(1), of the Rules of Practice of the Supreme Court of Ohio. Although petitioner claims he did not receive a copy of the Court of Appeals' order until the day following the expiration of the 45-day appeal period, he did not seek leave to file a delayed appeal to the Ohio Supreme Court and, indeed, made no further attempt to reopen his appeal until over a year later.

15

September 18, 1998, to initiate his second attempt to reopen his appeal. The Ohio courts have for many years consistently held that "[g]ood cause can excuse the lack of a filing only while it exists, not for an indefinite period." *See, e.g., State v. Carter*, 640 N.E.2d 811 (Ohio 1994) (per curiam) (affirming the denial of an application for reopening, despite the fact that the defendant had been represented by the same counsel on direct appeal and further appeal to the Ohio Supreme Court, because no good cause was established for defendant's failure to file the application to reopen until over one year after the Ohio Supreme Court's decision on direct appeal), *cert. denied*, 514 U.S. 1010 (1995); *see also State v. Ballew*, 729 N.E.2d 753, 754-55 (Ohio 2000) (per curiam); *State v. Fox*, 700 N.E.2d 1253, 1254 (Ohio 1998) (per curiam); *State v. Jells*, No. 54733, 2000 WL 545963 (Ohio Ct. App. Apr. 26, 2000) (unpublished), *aff'd*, 739 N.E.2d 345 (Ohio 2000); *State v. Carter*, No. C-920604, 1999 WL 33441359, at *1 (Ohio Ct. App. Oct. 21, 1999) (unpublished).

The Court is concerned by petitioner's final argument that given the Sixth Circuit's decision in *White*, which suggests he was constitutionally entitled to the appointment of counsel in the reopening matter as part of the direct appeal process, Ohio R. App. P. 26(B) is an "inadequate" procedural rule by failing to provide for the appointment of counsel to assist indigent prisoners such as himself in filing timely reopening applications. However, as a Sixth Circuit panel majority pointed out in an unpublished decision criticizing, but nevertheless following *White* in deciding a statute of limitations question, the Ohio courts of appeals have been unanimous in their refusal to follow *White* or to extend *White*'s holding to a case such as this, where petitioner neither requested nor was represented by counsel in the state reopening matter. *See Lambert v. Warden, Ross Correctional*, 81 Fed.Appx. 1, 5 (6th Cir. Sept. 2, 2003) (not published in Federal Reporter) (and state cases cited therein) ("[i]n Ohio Courts, the response to *White* was unanimously hostile" as in "every single instance that the issue was raised, the Ohio appellate courts refused to follow the holding of *White*"). Contrary to the position taken in *White*, both before and after *White*, reopening applications have been universally viewed by the state appellate courts, and are implied in Rule II, § 2(A)(4)(b), of the Rules of Practice of the Supreme Court of Ohio, to be in the nature of petitions for "postconviction relief rather than a continuation of the direct appeal process." *State v. Collins*, No. 00AP-650, 2002 WL 77117, at *1 (Ohio Ct. App. Jan. 22, 2002) (unpublished) (and cases cited therein); *see also State v. Worwell*, No. 80871, 2003 WL 22019526, at *3 (Ohio Ct. App. Aug. 25, 2003) (unpublished), *appeal dismissed*, 800 N.E.2d 48 (Ohio 2003); *State v. Dozier*, Nos. 56120, 56121, 2002 WL 42964, at *2 (Ohio Ct. App. Jan. 3, 2002) (unpublished) (and cases cited

16

therein), *appeal dismissed,* 765 N.E.2d 877 (Ohio 2002); *State v. Bragg,* No. 58859, 2001 WL 1671424, at *1 (Ohio Ct. App. Nov. 26, 2001) (unpublished) (and cases cited therein), *appeal dismissed,* 763 N.E.2d 1186 (Ohio 2002); *cf. Lambert,* 81 Fed.Appx. at 5 (although recognizing the Ohio Supreme Court had not yet addressed the question raised by *White*, "in its practice rules it implies that 26(B) applications are postconviction matters"). Indeed, in *Lambert,* the panel majority suggested in dicta that in contradiction to *White,* "26(B) applications should be classified as collateral, rather than direct, review" since "the Ohio courts, the authoritative interpreters of Ohio procedure, are unanimous in consider 26(B) applications to be part of collateral review and have held so repeatedly before and after *White,*" and the "Ohio Supreme Court's rules of practice agree" with this interpretation. *Lambert,* 81 Fed.Appx. at 8-9.

Therefore, it appears clear that at least as a matter of state law, it was a "firmly established" and "regularly followed" practice to treat reopening applications as post-conviction petitions, to which no constitutional right to counsel attached, *see Coleman,* 501 U.S. at 752, and *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987), that could be used as a "good cause" argument for excusing an untimely filing. The Court refuses to find that the Ohio Court of Appeals' application of this "firmly established" and "regularly followed" practice, in determining that petitioner was not entitled to the appointment of counsel to assist him in the filing of a timely reopening application, was "inadequate" as a matter of federal constitutional law based on *White.* Although *White* remains binding precedent in the Sixth Circuit, the *Lambert* majority decision has raised doubts about its "continuing viability." *Eads v. Morgan,* 298 F.Supp.2d 698, 707 (N.D. Ohio 2003) (although faced with the very question decided in *White* as to whether the lack of effective assistance of counsel in a state reopening matter may constitute "cause" for a state procedural default for purposes of federal habeas review, out of concern about *White*'s "continuing viability," the district court certified two questions to the Ohio Supreme Court for the purpose of obtaining guidance from the state's highest court as to when, if ever, an application for reopening may be considered a part of the direct appeal); *see also Granger v. Hurt,* 84 Fed.Appx. 500, 503 (6th Cir. Dec. 3, 2003) (not published in Federal Reporter) (although holding based on *White* that a federal habeas petition was timely filed, the court discussed an "alternative ground" for its decision "in light of the apparent discontent with *White*"), *amended and superseded by,* 90 Fed.Appx. 97 (6th Cir. Jan. 23, 2004) (not published in Federal Reporter). In any event, *White* should not be extended to excuse the many procedural defaults committed by petitioner in this case over the

17

years preceding that decision.

Accordingly, in sum, the Court concludes that contrary to petitioner's arguments in Ground Seven of the petition, the state appellate courts' refusal to reopen petitioner's appeal for lack of "good cause" shown was based on an adequate and independent state ground, which may serve to bar review of the merits of petitioner's remaining claims alleged in Grounds One through Six. Because of his many procedural defaults, petitioner has waived these claims absent a showing of cause and prejudice or that a fundamental miscarriage of justice will occur if the underlying merits of the claims are not reviewed. *See supra* pp. 8-9, 10; *Coleman,* 501 U.S. at 750; *Harris,* 489 U.S. at 262.

As discussed in detail in the Report and Recommendation that resulted in the dismissal of petitioner's first federal habeas petition, petitioner has not shown cause for his procedural defaults in the state courts when he attempted to reopen his appeal first in 1997 and then over a year later in 1998. (Doc. 5, Ex. S, pp. 11-14). Moreover, as discussed above, *see supra* pp. 14-18, petitioner's claims of "cause" asserted in his successive, delayed application for reopening filed after the dismissal of his prior federal habeas petition are not sufficient to justify his failure to file a timely application for reopening with the Ohio Court of Appeals or to excuse his numerous procedural defaults in attempting to seek a delayed reopening of his appeal. Finally, petitioner has not demonstrated that a fundamental miscarriage of justice will occur if the procedurally-defaulted claims alleged in Grounds One through Six are not addressed on the merits by this Court.

Accordingly, in sum, petitioner has waived the claims alleged in Grounds One through Six of the petition. Petitioner has not demonstrated cause for his numerous procedural defaults or that a fundamental miscarriage of justice will occur if the underlying merits of these claims are not reviewed by this Court. Moreover, petitioner is not entitled to habeas relief to the extent he claims in Ground Seven that: (1) the procedural bars set forth in Ohio R. App. P. 14(B), 26(A), 26(B) could not be relied on by the state appellate courts as adequate and independent state grounds precluding federal habeas relief; and (2) the state appellate courts failed to "follow" the exceptions to those rules in this case. Therefore, petitioner is not entitled to habeas corpus relief based on any of the seven claims asserted as grounds for relief in the petition.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 2) be DENIED with prejudice.

2. A certificate of appealability should not issue with respect to the claims alleged in Grounds One, Two and Six of the petition, which this Court has concluded are waived and thus barred from review on procedural grounds; although in light of the Sixth Circuit's *White* decision, "jurists of reason" would find it debatable whether this Court is correct in its procedural ruling" under the first prong of the applicable two-part standard enunciated in *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether these grounds for relief state a valid claim of the denial of a constitutional right that may be remedied a federal habeas proceeding under the second prong of the *Slack* test. *See also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). A certificate of appealability should issue with respect to petitioner's remaining claims found to be waived, which are alleged in Grounds Three through Five, because under the two-prong *Slack* test, "jurists of reason" would find it debatable both (1) whether this Court is correct in its procedural ruling in light of *White*, and (2) whether each of these grounds for relief state a valid claim of the denial of a constitutional right. Finally, a certificate of appealability should issue with respect to the claim alleged in Ground Seven, which was addressed on the merits and thus is not governed by *Slack*, only to the extent petitioner alleges that under *White*, this Court is incorrect in its procedural ruling that the Ohio courts relied on an adequate state ground which precludes federal habeas review of the merits of Grounds One through Six of the petition.

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis*, the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would be taken in "good faith," and therefore GRANT petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman*, 117 F.3d 949, 952 (6th Cir. 1997).

Date: 6/17/04                                    s/Timothy S. Black

cbc

Timothy S. Black
United States Magistrate Judge

J:\BRYANCC\2004 habeas orders\02-425denypet.sol-waiv-reopn.wpd

20

## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

Ted Marcum,
    Petitioner,

                                       Case No. 1:02cv425
       v.                             (Weber, J.; Black, M.J.)

Ohio Adult Parole Authority,
    Respondent.

### NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Black, United States Magistrate Judge, in the above-entitled habeas corpus action. Pursuant to Fed. R. Civ. P. 72(b), which may be applied in this action under Rules 1 and 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof. Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s). Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections. *See* Fed. R. Civ. P. 72(b). A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).